[Civ. No. 3660. Third Appellate District.—February 11, 1929.]

JOHN J. BOUEY, Respondent, v. WALTER L. PORTERFIELD, Appellant.

Harry M. Irwin for Appellant.

William H. Fuller, Charles L. Bogue, Charles E. Putnam and Charles W. Hackler for Respondent.

JAMISON, J., *pro tem.*—This action was tried upon the amended complaint of respondent which contained three counts. In the first count thereof respondent seeks rescission of a contract entered into between himself and defendants Porterfield and Deyot upon the ground of fraud and fraudulent representations. In the second count he seeks judgment against defendants for money had and received, and in the third count he seeks to set aside the contract and for return of money advanced by him thereon upon the ground of fraud practiced upon him by said Porterfield and Deyot, and for failure of consideration.

The action was dismissed as to The Porterfield Company and judgment was rendered in favor of respondent against

Porterfield and Deyot. Porterfield alone appeals. The facts of the case are as follows:

Through an advertisement inserted in the "Los Angeles Times" respondent met the defendant Deyot and appellant Porterfield. They told him they were incorporating The Porterfield Company and were looking for a bright young man to learn the business, a general brokerage business, in which said corporation was to engage, that they wanted this young man to put in $5,000, that they were going to incorporate said company for $25,000 and one-third of the stock would be issued to each of them, that they had $400,000 worth of bonds of the Imperial Gypsum Company, that they were going to finance the erection of a terminal warehouse to the amount of $150,000, and were going to finance the Whitewater Cement Company, that Deyot and Porterfield would each put into said company $8,333.33 in cash, and that all money advanced by each and all of the parties would be returned to them out of the dividends and earnings of said company within ninety days.

That by reason of these representations respondent was induced to pay over to said Deyot and Porterfield $3,850 and that immediately after these representations were made and on January 18, 1924, Porterfield and Deyot, as parties of the first part, and respondent, as party of the second part, entered into a contract to the effect that said parties would incorporate The Porterfield Company with a capital of $25,000, divided into 2,500 shares of the par value of $10 per share, the business of the corporation to be dealing in all kinds of securities and promotion of California industries. Porterfield was to be president and treasurer of said corporation and Deyot to be vice-president and general manager and respondent to be secretary and assistant general manager thereof under the supervision of Deyot. Respondent was to have a salary of $250 per month.

The contract further provided that each of the said parties was to purchase one-third of the capital stock of said corporation at par value, that Deyot and Porterfield were each to pay $8,333.33 cash for their respective thirds of said capital stock when the company was incorporated, that respondent was to pay $8,333.33 for his third of said capital stock as follows: $3,500 upon the execution of the contract and the remainder of said $8,333.33 to be paid in payments of $50 per

month and the dividends declared by the corporation until the said $50 per month and dividends completed the payment of the said sum of $8,333.33, nothing being said in the contract regarding the additional $350 paid by respondent to Porterfield and Deyot.

When the $3,850 was paid over by respondent, Porterfield deposited it in a bank and drew checks against the same in the name of W. L. Porterfield, treasurer, although the by-laws of said corporation provided that all of its checks should be signed by the treasurer and countersigned by the president, vice-president or secretary.

Neither Porterfield nor Deyot ever paid over any part of the $8,333.33 each of them had agreed to pay as the purchase price for the capital stock of said corporation. Up until a few days prior to June 25, 1924, Porterfield gave respondent to understand that he intended to and would pay the said $8,333.33 for both himself and Deyot. A few days prior to said last-named date Porterfield informed respondent that he did not intend to pay and would not pay the purchase price of said capital stock or any part thereof, and thereupon on said twenty-fifth day of June, 1925, respondent served upon said Deyot and Porterfield notice of the rescission of the said contract and demanded the return of the money he had paid to them. None of the capital stock of said corporation had been issued and delivered to respondent. The company had done no business, nor had respondent received anything of value from said corporation, or from Deyot or Porterfield, under said contract, or otherwise, except a part of his said salary. On July 23, 1924, respondent Deyot and Porterfield prepared and signed articles of incorporation for said company and thereafter said company was duly incorporated.

The trial court found that the statements and representations of Deyot and Porterfield that they would each purchase one-third of the capital stock of said corporation and pay $8,333.33 therefor, that they had $400,000 of the bonds of the Imperial Gypsum Company to sell, $150,000 to finance the erection of a terminal warehouse, or were going to finance the Whitewater Cement Company and that respondent's investment would be returned to him within ninety days were all untrue, false, and fraudulent, were known to said Deyot and Porterfield to be false and untrue, that their said prom-

ises were made without any intention on their part of performance, and were made for the purpose and with the intent of causing and inducing respondent to pay the $3,500 in cash, and that, relying upon the said representations and believing them to be true, respondent paid over to said Deyot and Porterfield the said sum of $3,500, and all of these findings are supported by the evidence.

The court further found that at the time respondent entered into the contract with Deyot and Porterfield, he had had no experience in the business then being conducted by them, nor any knowledge or experience in the business that would be carried on by the corporation, nor of similar business, nor of the value of the capital stock of said corporation and for information upon said matters respondent was compelled to rely and did rely upon the statements and representations of Deyot and Porterfield, and this finding is fully supported by the evidence. The court also found, and this finding is supported by the evidence, that the shares of the capital stock of said corporation, which respondent purchased as aforesaid, was wholly worthless and without any value and that ever since its purchase by respondent it has not been, nor is it now, of any value whatever.

Mere failure to perform a promise made in good faith does not constitute actionable fraud. However, a promise made without any intention of performing it is actionable fraud. (Subd. 4, sec. 1572, Civ. Code; *Rheingans* v. *Smith*, 161 Cal. 362 [Ann. Cas. 1913B, 1140, 119 Pac. 494]; *California Credit Corp.* v. *Carpenter*, 77 Cal. App. 18 [246 Pac. 126].) And the intention not to perform a promise is a matter of inference from the facts proven. (*Holliday* v. *Tolosano*, 39 Cal. App. 151 [178 Pac. 170].) In the case of *Henry* v. *Continental Building etc. Assn.*, 156 Cal. 680 [105 Pac. 965], the court said: "A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be non-existent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion."

Appellant claims that respondent had the opportunity of discovering and should have known and discovered the falsity of the representations of Deyot and Porterfield, if, in fact, the said representations were untrue.

There is no evidence that respondent had such opportunity. The contract was drawn up and the money paid over immediately after the false representations, and the false promises were made to respondent. Even though opportunity for investigation was open to respondent, this, of itself, would not prevent his recovery in this action. Bigelow in his work on Fraud, volume 1, section 523, says: "The proposition has now become very widely accepted at law as well as in equity, that a man may act upon positive representations of fact, notwithstanding the fact that the means of knowledge were specifically open to him." And Pomeroy's Equity Jurisprudence, section 896, also lays down the rule that the mere existence of opportunities for examination are not sufficient to prevent reliance upon fraudulent representations assumed to be within the knowledge of the party making them.

In the case of *Teague* v. *Hall*, 171 Cal. 668 [154 Pac. 851], the supreme court of this state said: "This view of the law has been repeatedly declared in the decisions of this state," and among the numerous cases cited in support thereof, calls attention to the case of *Ruhl* v. *Mott*, 120 Cal. 668 [53 Pac. 304], wherein the court said: "It is true that where one is justified in relying, and in fact does rely, upon false representations, his right of action is not destroyed because means of knowledge were open to him."

We think the court's finding to the effect that, by reason of the false representations and false promises made to him by Deyot and Porterfield, he was induced to pay over and did pay over to the said Deyot and Porterfield the sum of $3,850, is supported by the evidence.

Appellant strongly insists that the case should be reversed because the second count of the complaint does not state a cause of action, in that it is for money had and received, and no allegation is therein made that the money was had or received for the use or benefit of respondent. The consideration of this contention is important only by reason of the fact that the first and third counts mention only the sum of $3,500 as having been paid over to Deyot and Porterfield, and that in no place in the amended complaint, except in the second count thereof, does this additional $350 appear. The judgment of the court was for the sum of $3,850. No demurrer was interposed to the amended complaint. However, at the beginning of the trial, defendants

objected to the introduction of any evidence upon the ground that the complaint did not state facts sufficient to constitute a cause of action, the alleged defect in the second count not being pointed out or mentioned. There is no doubt but that the second count was defective in failing to state that the money was had or received for the use of respondent. (*Fox* v. *Monahan,* 8 Cal. App. 707 [97 Pac. 765] ; *Rand* v. *Columbian Realty Co.,* 13 Cal. App. 444 [110 Pac. 322].)

Just why the contract entered into between the parties stated that upon its execution respondent should pay to Deyot and Porterfield only the sum of $3,500, instead of $3,850, is not shown. Apparently, after the contract was drawn up and before the money was paid over, the amount to be paid by respondent was changed to $3,850 for the check or draft that was given to Porterfield was dated January 18, 1924, the day the contract was executed, and was for the sum of $3,850, which included the $3,500 named in the contract. In the case of *Slaughter* v. *Goldberg-Bowen & Co.,* 26 Cal. App. 318 [147 Pac. 90], which was an action for damages brought by the administrator for the death of plaintiff's intestate, the complaint failed to show the existence of heirs. The action for the death being statutory, the personal representative of deceased is permitted to bring the action merely as a statutory trustee for the benefit of heirs, and in the absence of heirs, no action lies, and no cause of action would be stated, unless the complaint alleged the existence of heirs. In that case judgment went for the plaintiff and the court refused to reverse the case on the authority of section 475 of the Code of Civil Procedure, and in doing so said: In the case here the trial proceeded in all respects as though the pleadings sufficiently presented the issue as to there being heirs, and precisely as it would had the complaint contained the allegation which it is insisted it should have contained. Why should this case go back to have the complaint amended, as it is manifest that the proof would have been the same? How can it be said that defendant has sustained substantial injury that a different result would have been probable if such error had not occurred?"

In the case under consideration, when the general objection was made by Porterfield and Deyot to the introduction of any evidence, because the complaint did not state a cause

of action, they pointed out that the matters set forth in the first count of the complaint failed in certain particulars to state a cause of action. Had they pointed out the particular objection to the second count that appellant now urges, there can be no doubt that the complaint would have been amended so as to cure the defect. In the case of *Texas & Pac. Ry. Co.* v. *Lacy*, 185 Fed. 226, the court said: "If there were no statutes or local decisions to sustain the view, we would hold, nevertheless, that a defendant would not be permitted to successfully urge the alleged defect in the count in this court after entering a general denial and trying the case on its merits in the lower court and having failed to suggest the alleged defect in the lower court."

We are satisfied that this case was fully and fairly tried and the error alleged in the second count of the complaint did not prejudice the substantial rights of the appellant and that the same did not affect the result of the action, and from an examination of the entire cause, we are of the opinion that the said error has not resulted in a miscarriage of justice. Under the authority conferred by section 4½ of article VI of the constitution, we feel that we should not reverse the judgment for the alleged error appearing in the second count of the complaint.

The judgment is, therefore, affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 13, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 11, 1929.

All the Justices concurred.