[L. A. No. 15892. In Bank.—June 2, 1939.]

CLAUDE J. LONGWAY, Appellant, v. CAD M. NEWBERRY et al., Respondents.

J. K. Wilson for Appellant.

Anderson & Anderson for Respondent Newbery.

Arch H. Vernon, Earl E. Johnson and Lawrence L. Otis for Respondents Title Insurance and Trust Company et al.

THE COURT.—A hearing was granted in this court after decision by the District Court of Appeal, Third Appellate District, in order to give further consideration to the question relating to the liability, if any, of the defendant, Cad M. Newbery, and also to the question of the sufficiency of the evidence to support certain of the findings made by the trial court.

From a judgment in favor of the defendants in an action for rescission, the plaintiff has appealed.

There was no substantial conflict in the evidence. The uncontradicted facts surrounding the purchase of two lots by

plaintiff were as follows: That he was a resident of the state of Michigan and, during a visit to California in November, 1926, he purchased two lots in an unimproved tract of land located near the town of San Fernando, in Los Angeles County; that he visited the tract on November 22d; and that at that time and place he discussed the terms of purchase of the lots with the sales agents Johnson, Langmo and a Mrs. Ward, who told plaintiff that improvements, consisting of the installation of cement pavements, cement sidewalks and curbs, gas, water and electricity, would be made in connection with each lot, at no cost to the purchaser.

The record shows that the tract of land was owned by one C. W. Newbery, but that the legal title thereto was held in trust (No. S–7334) by the defendant Title Insurance and Trust Company, as trustee, under a subdivision trust wherein said Newbery was the beneficiary. By the terms of section two of the trust it was provided that after payment of trustee fees and expenses, and of commissions to sales agents for the sale of the lots, a certain percentage of the proceeds received therefrom was to be placed in an "Improvement Fund" and that the distribution of moneys to the "improvement fund" should continue until the trustee was furnished with evidence of the installation of all the improvements intended to be made to the real property covered thereby, and of the payment in full of all costs and expenses thereof. The record further shows that prior to the sale to plaintiff, and pursuant to its powers under the trust, the trust company employed the Howard Marr Organization, Inc., a realty firm, as its selling agent for the tract of land, and that sales agents Johnson, Langmo and Mrs. Ward, who dealt directly with plaintiff concerning the terms of the sale of the lots, were the employees of the realty company. It further appears that in the agency agreement made between the trust company and the realty company for the sale of the lots in the tract, it was provided that the realty company should have "the general care and custody of the above described property with authority to solicit and obtain purchasers therefor and to arrange the prices and *terms of sale*". (Emphasis added.) It also was provided in the agency agreement that "all of the acts, however, of said agent shall be subject to the approval and confirmation of said principal".

At the time plaintiff purchased the lots, on November 22, 1926, he paid to the trust company, through its sales agents, the sum of $4,270, being the full purchase price of the two lots which had been described to him as was indicated on an unrecorded (blue print) map as lots 11A and 11B, and received therefor a written receipt for the purchase price of each lot, in which each lot was referred to as being a part of tract No. 9179 of a *recorded* plat. The receipts also contained the following statements: "Trust No. S–7334 provides for the installation of the following improvements: sidewalks, curbs, streets, electricity, gas and water at no cost to purchaser".

The record also shows that a week after plaintiff had purchased the lots, and on November 29, 1926, *C. W.* Newbery assigned and transferred his entire beneficial interest in the said trust to the trust company as security for the performance by said Newbery of the obligations undertaken by him, as set forth in the trust. to install the improvements, "subject, however, to all terms and conditions of said . . . trust". It also was provided therein that upon the default of said Newbery in the erection and completion of the improvements he would pay to the trust company such amount of money as would enable the trustee to effect the construction of the improvements.

Thereafter the trust company sent to plaintiff in Detroit two deeds dated November 26, 1926, labeled respectively, on the outside of each, as "Lot 11A" and "Lot 11B"; but in the body of the deed labeled "Lot 11A", the property was described as the northeasterly twenty-five feet of lot 11, tract 9179, sheets 1 and 2, as per map recorded, etc., and the property covered by the deed labeled "Lot 11B" was referred to in the body thereof as all of lot 11 in tract No. 9179, except the northeasterly twenty-five feet thereof, etc.

Some few months after his return to Detroit, plaintiff learned that the improvements to the property were not being installed. He wrote to the trust company and to said Newbery with regard thereto, and thereafter various letters relating to the installation of the improvements were exchanged between plaintiff and the trust company, on the one hand, and between *C. W.* Newbery and plaintiff, on the other, until the death of said Newbery in May, 1933, and thereafter the correspondence was carried on between his widow, *Cad M.*

Newbery, and plaintiff. The letters disclosed that plaintiff had been charged with the payment of an assessment, which had been levied against the property of the City of Los Angeles for a street bond covering Sayre Avenue, upon which street.plaintiff's two lots abutted, and that plaintiff had paid the same. The correspondence also referred to the proposal to charge plaintiff the sum of $591.28 (payable over a period of years) asserted to be his proportionate share of charges assessed against the tract of land by the City of Los Angeles in connection with the installation by the city of a water system for that district. The correspondence further shows that although plaintiff paid certain moneys in connection with the water assessment, he protested the payment of the same for the reason, asserted by him, that at the time he purchased the lots, it was understood that installation of the improvements would be "at no cost to" him. Several letters were exchanged regarding the charges for the installation of water, and it appears that, up to the time the action was brought, in July, 1934, negotiations were being had with a view to refunding moneys paid by plaintiff for such charges. Plaintiff testified that at or shortly prior to that time he learned that, except for the installation of sidewalks, no improvements had been made on the tract.

Appellant contends that he is entitled to rescind the contract and recover his money because of the alleged false representations made by defendants, or their agents, that they would install the improvements, and their subsequent failure to do so; and also that he was entitled to the return of his money in that the offer for sale and the sale of the lots were made by reference to an *unrecorded* map, as prohibited by . Statutes of 1907, page 290, as that statute read at the time of the sale here involved.

Regarding the latter contention, on each of several occasions it has been held by respective appellate tribunals of this state that, under the provisions of Statutes of 1907, page 290, where a contract for the sale of land is made by reference to an unrecorded map, such contract is void, and that a vendee may recover his money paid thereunder (*Goodspeed* v. *Associated Almond Growers,* 208 Cal. 121 [280 Pac. 530]; *Silverthorne* v. *Percey,* 120 Cal. App. 83 [7 Pac. (2d) 746]; *Cook* v. *La Vina Land Co.,* 3 Cal. App. (2d) 21 [39 Pac. (2d) 458]; *Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]). In

other cases it has been held that recovery might be had under those circumstances, notwithstanding the fact that the vendee knew that the map was unrecorded (*Hubbard* v. *Turner,* 110 Cal. App. 358 [295 Pac. 465]; *Kozlowski* v. *Adams,* 102 Cal. App. 578 [283 Pac. 365]; *Harris & Hull* v. *McCarty etc. Corp.,* 102 Cal. App. 461 [283 Pac. 111]). ■ However, it also has been held that unless equitable considerations excuse the delay, the statute of limitations bars recovery of the purchase price (*Smith* v. *Bach,* 53 Cal. App. 63 [199 Pac. 1106]; *Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal. (2d) 501 [86 Pac. (2d) 102]). In the instant case, it appears that plaintiff knew that the map was not recorded at the time when he purchased the land. That being so, considering the time that had elapsed since the purchase, the right to maintain the action on that ground is barred.

■ With regard to the other question presented, i. e., whether the evidence was sufficient to support the finding of the trial court that no false representations were made, the appellant contends that the finding on this issue was without support in the evidence.

In part the trial court found as follows: That the trust company was the trustee in an agreement wherein *C. W.* Newbery was the beneficiary, but that the latter had no interest in the trust at the time of his death; that the plaintiff had entered into an agreement for the purchase of the lots, described upon an unrecorded map as lots 11A and 11B, and paid to the trust company the full purchase price therefor; that both the receipts and Trust No. S–7334 provided for the installation of specified improvements at no cost to the purchaser; that with the exception of sidewalks, substantially none of the other improvements had been made, and that the defendants had not advised plaintiff that the remainder of the improvements could not and would not be installed by them. However, in respect to those improvements which had not been made, the trial court also found that no false representations in that regard had been made by the defendants, their agents, or any of them, and that any representations that had been made at any time in connection with the installation of said improvements were believed by the makers or maker thereof to have been true, and that said or any representations were not made with intent to deceive plaintiff; that it was not true that plaintiff discovered in 1934, and for the first

time, the improvements had not been made, but that in 1927 plaintiff was informed that a part of said improvements had not been made; and that the action was barred by various statutes of limitations.

It is against the findings last hereinabove set forth that the appellant's attack is directed as being without support in the evidence. As hereinbefore has been stated, in part, the testimony of plaintiff was that certain representations were made to him by agents of the trust company prior to his payment of the purchase price, to the effect that the improvements would be installed. Not only was that testimony uncontradicted, but, of the four persons allegedly present at the time the representations in question were made, the agents Johnson and Langmo were in court at the time of the trial and each corroborated the statements of plaintiff in that regard. ■ Appellant contends the rule is that an intent to defraud may be inferred from the facts and circumstances shown in the case (citing *Wilson* v. *Rigali & Veselich,* 138 Cal. App. 760 [33 Pac. (2d) 455]), and that, considering all the facts and circumstances here shown to be present, particularly the import of certain of the letters which he received from the trust company and from *C. W.* Newbery, together with *the actual failure to install all the improvements,* there was evidenced on the part of the defendants at the time of purchase, an intent to deceive the plaintiff by the promise to install the improvements; that the statements made by the trust company and *C. W.* Newbery in their letters to him lulled him into a sense of security, situated as he was, several thousand miles from the property in question; that in reliance upon those letters he was entitled thereafter to believe that at least some of the improvements had been installed and that the remainder would be; and that under those circumstances the statute of limitations would not commence to run, in fact, until he had learned that all the improvements had not been and would not be installed.

The first letter written by plaintiff to the trust company was in October, 1927, in which he stated that he had been told no improvements were being made on the tract. Shortly thereafter the trust company replied: ''It is our understanding Mr. Newbery caused certain promises to be made with reference to the installation of improvements in the said Tract, which improvements have not yet been installed. We notified

Mr. Newbery several days ago that this Company would expect him to take immediate action to make the said improvements and it is hoped that he will commence work within the very near future."

In another letter from the trust company to plaintiff in April, 1928, the trust company said, "The Beneficiaries under both of the said trusts agreed to install sidewalks and public utilities at their own cost . . . Our reports indicate that most of these improvements *have been fully installed* and the beneficiaries in both Trusts *are bonded* to fully complete the improvements according to their promises. . . . " (Emphasis added.)

Also, in April, 1928, *C. W.* Newbery wrote to plaintiff: "We have been very busy installing our improvements, and I regret very much that you cannot come to California at this time, since the tract now presents a very pleasant appearance, and I am sure that you would be pleased with the present situation, and our prospects for the future."

In the case entitled *Wilson* v. *Rigali & Veselich*, 138 Cal. App. 760 [33 Pac. (2d) 455], relied upon by appellant, the plaintiffs bought two lots in the city of Burbank, California. Certain representations were made to the vendees to induce the purchase of the lots, one of which was that the installation of water, electricity, and all street improvements would be commenced shortly. The improvements were not made in accordance with the representations, although the defendants continued to make statements implying that they would be; and ultimately an action was brought by the plaintiffs for cancellation of the contracts. In upholding the judgment in favor of the plaintiffs, the court said: ▮ "The intention not to perform a promise is a matter of inference from the facts proven and subsequent conduct may be sufficient to show such intention (*Snyder* v. *City Bond & Finance Co.*, 106 Cal. App. 745 [289 Pac. 859]; *Bouey* v. *Porterfield*, 96 Cal. App. 674 [274 Pac. 766]). . . . Without the consideration of other evidence, *the subsequent failure to perform* warrants the inference that appellants *did not intend to perform* when they promised." (Emphasis added.) To the same effect see *Estate of Barrow*, 27 Cal. App. (2d) 402, 405 [80 Pac. (2d) 1006], and *Cox, Executor,* v. *Klatte,* 29 Cal. App. (2d) 150 [84 Pac. (2d) 290]. In the case last cited it also was said, " . . . The making of a promise without intent to perform

it constitutes fraud (Civ. Code, sec. 1572, subd. 4; *Wilson* v. *Rigali & Veselich, supra*) and in such a case, the proof of a single fraudulent representation is sufficient to support the judgment, and without the consideration of other evidence, the *subsequent failure to perform* warrants the inference that appellants did not intend to perform when they promised. (See *Snyder* v. *City Bond & Finance Co.*, 106 Cal. App. 745 [289 Pac. 859]; *Bouey* v. *Porterfield*, 96 Cal. App. 674 [274 Pac. 766].)'' (Emphasis added.)

The case of *Greenberg* v. *DuBain Realty Corp.*, 2 Cal. (2d) 628 [42 Pac. (2d) 628], presents a factual situation analogous to that in the instant case. There the plaintiff bought two lots in 1923, while in California, from the defendant realty corporation, through its agents. Plaintiff lived in New York, and shortly after making the agreement to purchase the lots, he returned thereto and did not again visit California until in October, 1931. During that period he wrote to the defendants, asking them to install certain improvements represented by them to be a part of the consideration for the purchase by him of the lots. The replies led the plaintiff to believe that the defendants would install the improvements, and the plaintiff continued to make payments on the purchase price of the lots. Upon his return to California in 1931, plaintiff learned that the improvements had not been installed and thereupon notified the defendants of the rescission of the contract, and brought an action therefor. In sustaining a demurrer to the complaint, the trial court held that the plaintiff was not entitled to rely upon the alleged fraudulent representations of the sales agents because of a stipulation contained in the contract limiting the agents' authority and, further, that the action was barred by the statute of limitations. In reversing the judgment, this court held that notwithstanding the attempted limitation of liability on the part of the principal, the latter was liable on the theory of unjust enrichment—the money retained by the principal being held by it as a constructive trustee for the person defrauded—in accordance with the rule stated in the case of *Speck* v. *Wylie*, 1 Cal. (2d) 625 [36 Pac. (2d) 618, 95 A. L. R. 760]; and that the action was not barred either by laches or by the statute of limitations. (See, also, *Weiner* v. *Roof*, 10 Cal. (2d) 450 [74 Pac. (2d) 736].)

In the instant case there was no *direct* evidence of an intention on the part of the defendants not to perform, but counsel for the defendant trust company concedes that "there was a breach, it is true, in the provisions of the declaration of trust and the agreement of Mr. Newbery for the installation of the improvements". The defendant trust company argues that the duty of installing the improvements rested upon *C. W.* Newbery, in accordance with the terms of Trust S-7334, and not upon the trust company. It also relies upon the asserted fact that in its letter to plaintiff, dated October 13, 1927, it informed plaintiff, in effect, that it had "repudiated any obligation to cause the improvements to be made, had not authorized anyone to make any such promise, but hoped that the improvements promised to be made by *Mr. Newbery* would be installed". (Emphasis added.)

Under the rulings in the decisions hereinafter cited, the trust company may not evade liability by relying on such an assertion, if in fact it had been made. It would be liable not only for the representations of its agents made at the time of the sale to plaintiff, but also for its own representation set forth on the receipts which plaintiff received, to the effect that the trust provided for the installation of the improvements. In this regard see: *Weiner* v. *Roof,* 10 Cal. (2d) 450 [74 Pac. (2d) 736]; *Graham* v. *Los Angeles First N. T. & S. Bank,* 3 Cal. (2d) 37 [43 Pac. (2d) 543]. A trust company, or one who holds the legal title to land becomes itself a principal and those who actually sell the land for such principal are its agents, and it is liable for their representations on the theory of unjust enrichment. (*Graham* v. *Los Angeles First N. T. & S. Bank,* 3 Cal. (2d) 37 [43 Pac. (2d) 543].) In the case last cited, which was an action for rescission of a contract for alleged fraudulent representations made in connection with the purchase of real property, the corporate defendant held the legal title to the land, as trustee, the beneficiaries being the sellers of the land. Representations were made to the plaintiffs by one of the defendants to the effect that certain improvements would be installed, and upon learning that they were not so installed, the plaintiffs brought the action to rescind. The trial court sustained a demurrer to the complaint filed by the defendant bank. In reversing the judgment this court said: "Although the complaint does not state that the bank as trustee holds funds for or is indebted to the

beneficiaries, yet it does set forth the fact that the bank *holds legal title* to the real property in trust for the beneficiaries, that the purchasers entered into the agreement with the bank *as holder of the legal title,* that they paid over to the bank on the purchase price of said lot the various sums set out in said complaint, that they had made a demand upon the bank for a return of said purchase price, and that said demand had not been complied with. These allegations are sufficient to render the bank liable, *at least in its relation as trustee,* for the repayment of the purchase price received by it.'' In so holding, the court in that case further said: ''Equally untenable is the contention of the respondent bank that inasmuch as the representations were not made by it, but by the individual respondents, the beneficiaries who were also the sellers, and the complaint contains no allegation that the respondent bank has the money of or is indebted to said beneficiaries, the complaint fails to state a cause of action against respondent bank to recover the money paid on the contract. Since the bank held legal title to the real property which the plaintiffs agreed to purchase, it follows that in the negotiations of purchase and sale relating to the real property, *the bank stood in the position of principal and the beneficiary-sellers stood in the position of agents.* It is now settled by the recent cases of *Speck* v. *Wylie,* 1 Cal. (2d) 625 [36 Pac. (2d) 618, 95 A. L. R. 760]; *Curtis* v. *Title Guarantee & Trust Co., supra,* 3 Cal. App. (2d) 612 [40 Pac. (2d) 562, 42 Pac. (2d) 323], and *Greenberg* v. *DuBain Realty Corp., supra,* that a purchaser who has been induced to enter into a contract by the fraudulent misrepresentations of an agent, by rescinding the contract may recover the consideration paid from the principal, although the principal was in fact ignorant of the representations made, and although such principal had attempted to limit its liability by a clause in the contract to the effect that it would only be bound by the representations contained in the written contract. This is upon the theory that an innocent principal so contracting may not be permitted to enrich itself by reason of its agent's fraud, and that any property received by such principal is held by it as a constructive trustee for the person defrauded.'' (Emphasis added.) The court also held, contrary to the contention of the defendants, that there was no undue delay in rescinding

the contract where it was shown that the delay was the result of indulgence shown the defendants by the plaintiffs.

In the case entitled *Weiner* v. *Roof,* 10 Cal. (2d) 450 [74 Pac. (2d) 736], legal title to a tract of land then being sold was held by a trust company under a subdivision trust. The trustee executed all contracts of sale and collected the proceeds thereof. The contract of the plaintiff, who had purchased one of the lots, was subsequently assigned by the trustee to the appellant bank, to which the plaintiff continued to make payments toward the purchase price. Upon discovery of the falsity of certain representations made prior to and at the time of the sale, the plaintiff brought the action to rescind. The court held that the plaintiff was not precluded ''from rescinding the contract for false representations of the selling agent and recovering the money paid thereunder from the principal *or any trustee* to whom the same had been paid; . . . ''. (Emphasis added.)

A consideration of all the facts and circumstances connected with the purchase of the lots by plaintiff herein, in the light of the declarations set forth in the aforementioned authorities, impels the conclusion, as a matter of law, that there was no evidence to support the findings upon which judgment for the defendant trust company was predicated.

The contention that there was no evidentiary support for the finding to the effect that plaintiff had not adequately complied with the provisions of section 1691, Civil Code, in that he had not tendered a deed to the defendants, must be upheld. Each of the defendants admitted receiving a formal notice of rescission from plaintiff. Therein, plaintiff made a demand for the return of the money paid by him for the lots. The notice of rescission further recited that plaintiff ''offered to return and tendered the return of everything of value'' received by him under the contracts. Plaintiff testified that on or about the time he brought the action he executed a quitclaim deed in favor of the trust company, and mailed the same to his attorney in Los Angeles, with instructions that it be delivered to the trust company on receipt of the moneys demanded by him in his notice of rescission. That demand was not complied with. Furthermore, the record shows that the quitclaim deed was offered in evidence at the trial, although an objection to its admission was sustained by the trial court.

■ With regard to the liability, if any, of defendant, *Cad M.* Newbery, the trial court found that she was the *widow* of *C. W.* Newbery and that she had succeeded to his estate, but that on November 29, 1926 (more than six years prior to his death) he had assigned all his beneficial interest in trust No. S–7334 to the defendant trust company; also, that the property which was the subject of the trust was her husband's separate property; that there was no contractual relation between said defendant and plaintiff, and that she had not assumed any obligation of *C. W.* Newbery in connection with the property which was the subject-matter of this action. These findings are supported by the evidence. Additionally, it may be noted that said defendant testified that she had received no moneys from the trust, and that her statement in that regard was not refuted. There appears to be no basis upon which liability against her may be made to rest.

■ Finally, the trust company asserts that the judgment rendered against it should be made collectible out of the proceeds of trust S–7334 only; and with regard to that specific trust (S–7334), the trust company declares that the assets have all been paid out, assertedly for trustee fees, real estate salesmen's fees, street improvements and installation of sidewalks, and taxes. There is no showing that any of the proceeds from the sale of the lots were paid by the trust company to Newbery (or to his widow). Nor does the record show that *all* the lots in the tract were sold; if any of them *have not* been sold, the trust would have (potential) cash assets to the extent of the value of the remaining lots.

The cases entitled *Curtis* v. *Title Guarantee etc. Co.*, 3 Cal. App. (2d) 612 [40 Pac. (2d) 562, 42 Pac. (2d) 323], *Graham* v. *Los Angeles First N. T. & S. Bk.*, 3 Cal. (2d) 37 [43 Pac. (2d) 453], and *Weiner* v. *Roof*, 10 Cal. (2d) 450 [74 Pac. (2d) 736], hereinabove referred to, were each factually similar to the case at bar, in that the purchaser of the lots, at a later time, brought an action for rescission because of alleged false representations, made at the time of purchase, relating to the sale of the property and proposed improvements thereto. In each of those cases, as in the instant case, at the time of purchase the legal title to the land was held in trust (for subdivision purposes), and recovery of the purchase price was sought *as against the trustee.*

In the case of *Curtis* v. *Title Guarantee etc. Co.*, 3 Cal. App. (2d) 612 [40 Pac. (2d) 562, 42 Pac. (2d) 323], the court found that the purchaser did not know he was dealing with the trust company in its trust capacity, but thought that the trust company was acting in its corporate capacity as owner of the fee, rather than as a trustee under a subdivision trust. The court ruled that the trust company,—having held itself out to be the owner in its corporate capacity—in order to avoid liability, could not rely on the fact that it was a trustee of an express trust. The court there relied on the holding in the case of *Speck* v. *Wylie*, 1 Cal. (2d) 625 [36 Pac. (2d) 618, 95 A. L. R. 760], which case involved the liability of a principal for false representations of its agents, and said: ''We are in accord with the above statements of the rule which will, all other things being favorable to the complaining party, allow him to rescind and *to pursue the principal* [the trustee] far enough to secure a return of the consideration paid.'' (Emphasis added.) There it is seen that the trustee was held liable in its corporate capacity where it had not made known to plaintiff the fact that it was acting as a trustee. However, what was said in that case does not necessarily imply that plaintiff could not have recovered against the trustee had she known that the trustee-seller in fact was acting as trustee under a subdivision trust.

In the case entitled *Graham* v. *Los Angeles First N. T. & S. Bk.*, 3 Cal. (2d) 37 [43 Pac. (2d) 543], the trust company contended that because the complaint contained no allegation that the trust company had the money of, or was indebted to, the beneficiaries, it failed to state a cause of action against the trustee bank to recover the money. But the court said, ''Since the bank had legal title to the real property which the plaintiffs agreed to purchase, it follows that in the negotiations of purchase and sale relating to the real property, the bank stood in the position of *principal* and the beneficiary-sellers stood in the position of agents.'' (Emphasis added.) The court there further said that even though the complaint did not allege that the bank as trustee *held funds for or was indebted to the beneficiaries*, it did set forth the fact that the bank held legal title to the property *in trust* for the beneficiaries; that the purchase agreements were entered into with the bank as holder of the legal title, to whom the purchasers paid the various sums on the purchase

price set out in said complaint; that they had demanded of the bank the return of said purchase price, and that said demand had not been complied with. The court held that these allegations were sufficient to render the bank liable, at least in its relation as trustee, for the repayment of the purchase price received by it. No substantial difference is readily discernible between the allegations set forth in the complaint filed in that case—which the court held were sufficient on which to predicate liability of the trustee—and the showing made by the plaintiff in the instant case. At least impliedly, the Graham case holds that the trustee-principal would be liable for the return of the money paid to it whether it held funds for or was indebted to the beneficiary-sellers, or not. The liability of the trustee in that case was predicated upon the fact that it was a principal in the transaction, rather than upon its status as a trustee. As such principal, it was held liable for the fraudulent representations of its agents—even though the latter were beneficiaries of the trust. The trustee being liable as a principal, on the theory of the principal and agency relationship, it could not assert its capacity as trustee to defeat the liability which would be fastened upon it as a principal under the agency theory.

In *Weiner* v. *Roof*, 10 Cal. (2d) 450 [74 Pac. (2d) 736], also, the court relied on the rule of *Speck* v. *Wylie*, 1 Cal. (2d) 625 [36 Pac. (2d) 618, 95 A. L. R. 760], that an innocent *principal* so contracting may not be permitted to enrich himself by reason of his agent's fraud, and that any property received by such principal is held by him as a constructive trustee for the person defrauded After stating this rule, the court in *Weiner* v. *Roof, supra,* said: "The fact that respondent's written contract to purchase a lot contained a clause restricting the representations to those therein set forth, did not preclude the respondent under the foregoing rule, from rescinding the contract for the false representations of the selling agent and recovering the money paid thereunder from the *principal or any trustee* to whom the same had been paid. However, inasmuch as the rule in *Speck* v. *Wylie, supra,* is grounded upon unjust enrichment, and was announced subsequent to the trial of this cause, we are of the view that the appellant, as trustee of the money paid to it by respondent, should be afforded the opportunity of showing, as it asserts it can, that it has paid over to the beneficial owner

the money for which judgment has been taken against it. Such a showing, if made, will disclose that the appellant [trustee], *an innocent party to the fraud,* has not been unjustly enriched and will preclude the entry of a monetary judgment against it under the rule mentioned.'' (Emphasis added.) In that case (*Weiner* v. *Roof*), as distinguished from the other two cases cited under the point now being considered, the appellant bank was said to be *an innocent party* to the fraud,—which was true because it was a *subsequent assignee* of the original trustee and, as such, it knew nothing of the fraudulent representations made at the time of the purchase; nor had it acquired any interest whatever in the contract until some time had elapsed after the said purchase. The situation there presented is, of course, distinguishable from the one in the case at bar. In the instant case the trustee appointed the agents who made the false representations at the time of plaintiff's purchase, and not only would it be liable for those fraudulent representations of its agents, under the rulings of *Speck* v. *Wylie, supra,* and the other cases hereinbefore mentioned, but the trustee was itself a party to the fraud practiced upon the plaintiff, in that: the receipt which it gave to plaintiff at the time of purchase carried the statement that its trust provided for the installation of the improvements; and that it made other false statements in the letters sent to plaintiff, to the effect that some of the improvements had been installed and others would be. These two facts, together with its failure thereafter to install the improvements, were evidence of its own fraud.

It follows from the foregoing discussion that the contention of the trust company that the judgment, if any, which may be rendered against it, should be collectible only from the assets of Trust, S-7334, is without merit.

In view of the conclusion reached herein, it becomes unnecessary to consider other points argued by respective counsel, including the contention that the property described in the deeds was not the identical property mentioned in the receipts received by plaintiff.

The judgment is reversed as to the defendant trust company, and affirmed as to the defendant Cad. M. Newbery.