[Civ. No. 14129. Second Dist., Div. One. Dec. 8, 1943.]

CHARLES WILLIAM CRAWFORD et al., Respondents, v. CHARLES B. HOPPER et al., Appellants.

Overton, Lyman & Plumb and B. R. Ware for Appellants.

Joseph Musgrove, Robert M. Miller and Thomas H. Cannan for Respondents.

YORK, P. J.—This is an appeal by defendants from a judgment rendered in favor of plaintiffs in an action for rescission of a contract for the purchase of real property, and for money had and received.

It appears from the record herein that on November 21, 1941, appellant Hopper, as sales agent for the corporate appellants, issued a receipt to respondents for the sum of $500, being a deposit on the total purchase price of $6,000 for Parcel 126 on Linda Flora Drive of Bel-Air, in the city of Los Angeles. The balance of $5,500 was paid by respondents on November 24, 1941.

The instrument of November 21st was accepted by respondent Madeline Thomas Crawford, and contained, among others, the following terms:

"Subject to Company restricting Parcel 125 adjoining above site on the South to a one-story dwelling . . . Taxes to be prorated for the year 1941, 1942 . . . The purchaser also agrees within 30 days . . . to accept a grant deed used by the seller . . . Time is the essence of this agreement. No verbal representations or promises not contained herein pertaining to the purchase of said property shall be binding upon Chas. B. Hopper, General Sales Agent, or the owner of said property. This receipt is given subject to the approval of the owner. On execution of the deed a certificate of title issued by a reputable title company with liability limited to the amount of the purchase price shall be furnished by the seller showing title vested in such seller. . . ."

Sometime during the latter part of December, 1941, while the property was in possession of appellants and without the knowledge of respondents, the United States Army took possession thereof, constructed buildings thereon, erected concrete foundations and made excavations for gun placements, and thereafter continued in possession without the consent of respondents.

On the twenty-ninth day after the date of said agreement, to wit: on December 20, 1941, appellant Hopper indited a letter to respondents to the effect that the transaction had been concluded and the grant deed to the property recorded. Enclosed therewith was a preliminary title report showing taxes due and delinquent in an amount of $3,501.22 for the year 1941-1942 on an unsegregated parcel of land which included said Parcel 126. There was also enclosed a guaranty from the Bell Corporation for the payment by it of such taxes as soon as a segregated tax bill could be secured or a subdivision map could be recorded. Said letter also stated that the respondents' prorata of the 1941-1942 taxes amounted to $44.75, a check for which respondents were requested to issue.

Immediately after receipt of the above named letter, respondents inquired at the office of appellant Hopper concerning their deed and also asked for an explanation relative to the tax lien and the guaranty of the Bell Corporation to discharge the same. They were informed that they would receive their deed in due course from the county recorder and were advised to consult their attorney regarding the delinquent taxes.

On January 17, 1942, respondents, through their attorney, having discovered by a search of the records that no deed had been recorded, cancelled the agreement of November 21 to purchase the property and demanded a return of the purchase price, giving as their reason for such action the failure of appellants to deliver a deed and certificate of title as provided in said agreement.

On February 14, 1942, appellants executed and caused a grant deed to be recorded and subsequently caused the same, together with a certificate of title, to be delivered to respondents, who shortly thereafter returned both documents to appellants accompanied by a notice of rescission tendering a quitclaim deed to the property in question dated March 2, 1942, demanding a return of the purchase price of $6,000,

and offering to restore appellants to their original position with respect to the transaction.

Appellants' main point on appeal is that respondents acquired no right to rescind the agreement to purchase until they had paid or tendered their pro rata share of the city and county taxes for the year 1941-1942, for the reason that the provision relating thereto in said agreement without specifying when the payment should be made, constituted a concurrent dependent obligation which should be performed by respondents before they could place appellants in default.

Real property taxes become a lien upon land on the first Monday of March of the year preceding the fiscal year for which they are levied (Rev. & Tax. Code, sec. 2192), and for nonpayment thereof the property will be sold in due course and in any event. The provision in the agreement of November 21, 1941, was doubtless inserted to insure respondents that appellants, as sellers, would pay the taxes for that part of the tax year which would eventually elapse before the execution of the deed conveying the property to respondents.

It is clear from the record that there existed a delinquency in the matter of tax payments covering a large tract of land of which the parcel here in question formed a part, and that the sum of $44.75 which was demanded by appellants from respondents was not a final ascertained amount, but was only an estimate. Respondents paid the entire purchase price of $6,000 on November 24, 1941, with the understanding that within thirty days after November 21, 1941, appellants would deliver to them a deed to the property and a certificate of title. It was not until February 14, 1942, that appellants performed their part of the contract. Meanwhile, on January 14, 1942, respondents had given them notice of cancellation and on March 2, 1942, rescinded the contract, at the same time executing a quitclaim deed and offering to restore appellants to their original position.

In the circumstances, it was not necessary for respondents to make payment of the estimated tax in order to restore appellants to their original position.

In the case of *Longway* v. *Newbery*, 13 Cal.2d 603, 615 [91 P.2d 110], where a purchaser seeking rescission of a lot purchase and to recover the price paid therefor, gave formal notice of rescission, made demand for a return of the pur-

chase price, offered to return anything of value received by him and executed a quitclaim deed to be delivered upon return of the money demanded, it was held that such purchaser complied adequately with section 1691 of the Civil Code, defining how rescission may be effected.

Appellants sought to excuse their failure to deliver the deed upon the ground that the respondents requested that the title order be kept open for an indefinite period within which they might arrange for and file additional documents respecting a building loan. However, respondent Charles William Crawford testified that the order for the title certificate was kept open for a period of ten days with his consent; and that after December 7, 1941, he abandoned his plans to build on the lot.

In the case of *Moresco* v. *Foppiano,* 7 Cal.2d 242, 245 [60 P.2d 430], an action in rescission by the purchaser of real property because of failure of seller to deliver a deed thereto, it is stated: ''The evidence supports the conclusion that the plaintiff did not waive delivery of the deed by the payment of $2,250 on March 17, 1932, but that at that time and at subsequent times he demanded a deed of the defendant's agent. It appears that the defendant in February, 1932, entered into an exclusive agency contract with one Harper, concerning the property here involved, and as to which there was then some litigation or threat of litigation, and from which the defendant did not become released or consider himself released so as to be in position to deliver a deed to plaintiff until one month after the present action was commenced. The questions whether the defendant committed a breach of his agreement to deliver the deed or whether there was a waiver by the plaintiff under the facts here presented were for the trial court to determine. (*Mercer* v. *Frank Meline Co.,* 8 Cal.App.2d 142 [47 P.2d 499]); *Goold* v. *Singh,* 88 Cal.App. 339, 343 [263 P. 548].) If the defendant was in default for failure to deliver the deed on March 17, 1932, and for failure to comply with subsequent promises to make delivery thereof, he may not rightly contend that the plaintiff under the facts could himself be considered in default so as to preclude the recovery by him of moneys paid under the contract.''

Under the evidence presented at the trial herein, the questions (1) whether appellants breached their agreement

to deliver the deed and certificate of title within thirty days after the agreement for sale was entered into; and (2) whether respondents' offer to restore appellants to their original position with respect to the transaction was a sufficient prerequisite to an action for rescission,—were questions of fact for the trial court to determine. (*Moresco* v. *Foppiano, supra.*) That court having found against appellants, in support of which ample evidence appears in the record, it is not within the province of this court to reverse the judgment based thereon.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied December 31, 1943, and appellants' petition for a hearing by the Supreme Court was denied February 3, 1944.