[Civ. No. 28760.   Second Dist., Div. Two.   Nov. 17, 1965.]

CARL L. VAUGHN, Plaintiff and Appellant, v. CERTIFIED LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and Respondent.

Frank R. Saletri for Plaintiff and Appellant.

Bayard R. Tanksley for Defendant and Respondent.

ROTH, P. J.—On September 25, 1963, appellant Carl Vaughn filed suit in the superior court against respondent Certified Life Insurance Company for actual and punitive damages.

After two demurrers by respondent[1] were sustained, appellant filed a second amended complaint in two counts.

Appellant in his first cause of action, in the form of a common count, alleges that on or about October 3, 1961, respondent became indebted to him in the sum of $128.25, which money was "an agreed price" paid to respondent as a premium on a certain hospital and medical expense insurance policy, and that no part of it has been paid to him. There is no allegation nor is there any legal implication from the allegations which are made that there was an agreement to repay. The third paragraph alleges that respondent acted fraudulently and maliciously in taking appellant's money and refusing to honor the terms of the policy, and asks for punitive damages in the amount of $50,000. The trial court *sua sponte* struck the third paragraph and sustained the demurrer on the ground it had no jurisdiction and it stated no cause of action.

Appellant's second cause of action more fully sets forth the circumstances of the suit and sounds in fraud.

It is alleged that: on or about October 3, 1961, respondent sold appellant a Hospital and Medical Expense Insurance Policy for a certain specified premium; said policy included an elimination rider which excluded all payments "for loss incurred by such person resulting directly or indirectly, wholly or partly from any injury to or disease of my spine or operation therefor"; on or about February 16, 1962, appellant was injured in a traffic accident, and as a result thereof incurred hospital-medical expenses in the amount of $763.18; thereafter appellant made a claim to respondent for payment of the bills, but the respondent refused to honor the claim on the grounds of the elimination rider "when in fact, the injuries so suffered by the Plaintiff were to the muscles, ligaments and tendons of the back, and not to the bony spine proper, as the [respondent] well knew at the time of refusing Plaintiff's claim."

Appellant refers to "said representations" many times in his second cause of action but nowhere directly states what those representations were. In paragraph VI he alleges in part: ". . . that said representations were false and fraudulent in the following particulars:

---

[1]Appellant's appeal from the order sustaining the demurrer to his first amended complaint is without merit. By filing a second amended complaint he has waived his right to question that ruling (*Farr* v. *Bramblett,* 132 Cal.App.2d 36, 48-49 [281 P.2d 372]).

"(a) The Defendants, and each of them, in fact informed Plaintiff that said Elimination Rider attached to said Policy was intended by them to eliminate from Policy coverage only injuries to the bony spine proper, and that any injuries to the muscles, ligiments [*sic*] and tendons of the back would be covered under said policy and not subject to the elimination rider portion of said policy.

".  .  .  .  .  .  .  .  .  .  .  .  .  ."

Appellant further alleges that he relied on the representation and would not have entered the contract had he known of its fraudulent nature; that he has been damaged in the amount of $128.25 for the premium, and $763.18 for hospital and medical expenses; and that he is entitled to punitive damages of $50,000.

Respondent's general and special demurrer to the second amended complaint was sustained with leave to amend in 20 days.

Appellant's motion to reconsider was denied and upon respondent's motion to dismiss the complaint and each count thereof, appellant having failed to amend within the time required or at all, judgment was entered. From this judgment this appeal is taken.

Appellant has failed to state a cause of action either in common count or in fraud. ■ When a plaintiff is given the opportunity to amend and elects not to do so, the presumption is that he has stated as strong a case as he can. In such a situation, strict construction is required. (*Lucas* v. *Roberts*, 201 Cal.App.2d 365, 366 [20 Cal.Rptr. 23] ; *Melikian* v. *Truck Ins. Exchange*, 133 Cal.App.2d 113, 115 [283 P.2d 269] ; *Curci* v. *Palo Verde Irrigation Dist.*, 69 Cal.App.2d 583, 585 [159 P.2d 674].) ■ When the circumstances are such as in the case at bench, if the complaint is objectionable on any ground, the judgment of dismissal must be affirmed. (*Totten* v. *Underwriters at Lloyd's London*, 176 Cal.App.2d 440, 442 [1 Cal.Rptr. 520].)

Historically, the common count derives from the writ system of the common law. (*Philpott* v. *Superior Court*, 1 Cal.2d 512, 518 [36 P.2d 635, 95 A.L.R. 990].) It is based upon an archetypical legal relationship, pleaded as a general conclusion of law, from which the plaintiff's right to the relief he seeks is derived.[2] However liberal the rules permit-

---

[2] An excellent historical review of the common count, including a list of its forms as they became fixed, is found in 14 So.Cal.L.Rev. 288, King, *The Use of the Common Counts in California*.

ting common counts may be, there must be some certainty in respect of the obligation a plaintiff seeks to enforce. ▪ It is settled in California that a common count, to be sufficiently pleaded, must state not only the indebtedness of the defendant but also directly or impliedly the relationship or the express or implied legal principle upon which a promise to plaintiff is predicated. ▪ Nothing is alleged in Count I which expressly or impliedly creates an obligation to repay anything to appellant. (*Fox* v. *Monahan,* 8 Cal.App. 707, 709-710 [97 P. 765]; *Bouey* v. *Porterfield,* 96 Cal.App. 674, 680 [274 P. 766]; *Smith* v. *Bentson,* 127 Cal.App. Supp. 789, 794 [15 P.2d 910].)

In *Smith* v. *Bentson, supra,* the court says at page 794: ". . . [A] complaint is not good as a common count unless it either expressly alleges a promise by the defendant to pay or alleges facts from which such a promise is implied by law." In the case at bench there is no allegation sufficient to show an implied-in-law contract to repay. Indeed, the allegation that the money was paid as an agreed premium for an insurance policy indicates that the respondent has a right to retain the money. Where the money is paid by one person to another, the presumption is that it was due the latter (Code Civ. Proc., § 1963, subd. 7; *Fox* v. *Monahan, supra,* at p. 710), and private transactions are presumed to have been fair and regular (Code Civ. Proc., § 1963, subd. 19; *Van Fossen* v. *Yager,* 65 Cal.App.2d 591, 595 [151 P.2d 14]).

We conclude, therefore, that appellant has failed to state a cause of action in common count.

▪ The case of *Lesperance* v. *North American Aviation, Inc.,* 217 Cal.App.2d 336 [31 Cal.Rptr. 873], is peculiarly applicable to the second count of appellant's complaint. The court says at page 344:

"Apropos the sufficiency of a pleading in fraud actions are the observations of Mr. Witkin in 2 Witkin, California Procedure, page 1327: 'Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. ▪ The effect of this rule is twofold: (a) General pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud

must be alleged. (2) Every element of the cause of action for fraud must be alleged in the proper manner (i.e. factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' "

In the case at bench, numerous references are made in the complaint to "said representations", but nowhere in the complaint are representations set forth. Paragraph VI alleges that ". . . said representations were false and fraudulent in the following particulars: . . ." and then proceeds to describe what appears to be a representation made by respondent. From this allegation, however, it cannot be determined whether this representation was made at the time of contracting or subsequently, nor is it clear that this was the representation upon which appellant allegedly relied. Appellant does not state a cause of action in fraud.

Reviewing the record and briefs, it becomes apparent that appellant has taken a simple contract case of municipal court jurisdiction, and inflated it in both counts with an allegation and a prayer for punitive damages. In a case such as this, wherein nothing is disclosed by way of ultimate fact allegation or otherwise to warrant a conclusion of fraud or the assessment of punitive damages, we are disposed to prevent imposition on our court structure by rigid adherence to the technical rules of pleading.

Our legal procedure is replete with legal remedies designed to apply readily to almost any transaction. The pleading in the case at bench prostitutes this procedure in an attempt to fix a liability on respondent which exists only in the mind of an optimistic pleader. The liability the pleader seeks to weave is verbalized but no fibers of fact, real or synthetic, are pleaded to make a web. If appellant has in fact been wronged, he may still have an action in the proper court on the contract squinted at in his pleading but religiously avoided as the source of any rights.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.