[Civ. No. 10373.   Third Dist.   May 8, 1962.]

ROBERT ZEPPI et al., Plaintiffs and Respondents, v. THE STATE OF CALIFORNIA et al., Defendants and Appellants.

Robert E. Reed, Harry S. Fenton, Robert F. Carlson, Kenneth G. Nellis and Raymond A. Leonard for Defendants and Appellants.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Plaintiffs and Respondents.

PIERCE, J.—In October 1957, plaintiffs filed an action for personal injuries against the State of California, certain of its employees and individual defendants. A demurrer by the state was sustained without leave to amend. The ground of demurrer was "governmental immunity" of the state against tort liability. Plaintiffs appealed to this court from the judgment of dismissal against the state and the judgment appealed from was affirmed. (*Zeppi* v. *State of California*, 174 Cal.App.2d 484 [345 P.2d 33].) Hearing by the Supreme Court was denied. The remittitur was issued December 15, 1959. A jury trial in July 1960, resulted in a judgment of nonsuit against the state employees and a verdict and judgment against the individual defendants in favor of plaintiffs which has been only partially satisfied. In January 1961, the California Supreme Court in *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], held that the doctrine of governmental immunity could no longer be used to shield an entity of government from liability for torts for which its agents were liable. This decision became final February 27, 1961. On March 24, 1961, a motion was made by plaintiffs to the trial court to vacate the judgment of dismissal against the State of California. On June 14, 1961, the trial court entered its order vacating the judgment and overruling the demurrer of the state. This appeal followed.

The theory of plaintiffs-respondents (and it was accepted by the trial court in ruling on their motion) was this: That the previous rulings of the superior court in sustaining the demurrer of the state, and in entering the judgment of dismissal and of this court in affirming the judgment, and of the Supreme Court in denying a hearing, were all *"mistakes"* and that such mistakes, whether they be considered mistakes of law or of fact or both, are subject to relief by a court of equity, notwithstanding the doctrine of res judicata or the doctrine of law of the case. As case support for this contention respondents cite, as "front-line" authority, *Olivera* v. *Grace*, 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328], which holds that: "One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him." (Citing cases.)

The "extrinsic factor" there involved was a default taken against a party known by the plaintiff to be incompetent (and thus constituted actual fraud in all probability). There is

also in *Olivera* discussion of "judgments taken under circumstances of unfairness and injustice" and judgments "based upon the absence of a fair, adversary trial in the original action" or judgments "which cannot be conscientiously enforced." Plaintiffs argue such a "mistake" of law and fact here in that Mr. Justice Traynor in *Muskopf, supra,* said at page 213 (and here counsel lifts the words from context) that the rule was "mistaken and unjust," and at page 216, "In fact, it does not exist."[1] They also urge that equity should relieve from the harsh consequences of the doctrine of res judicata because, they say, since abrogation of the shield of sovereign immunity, it would be "unfair" and "unjust" to enforce former judgments as a bar which were based upon that doctrine while preserving the rights of claimants with uncompleted causes of action.

■■■■ Defendant state contends (1) that there was no mistake in any of the rulings which resulted in a final judgment against the Zeppis for the reason that governmental immunity has always been the rule in this state until it was "discarded, removed and abrogated" by the *Muskopf* decision; (2) that if it could be regarded as a mistake it was an intrinsic mistake; (3) that if the rule is harsh, it is no more so than any application of the rule of res judicata which, whenever it is invoked after a change in case law, leaves litigants with finally adjudicated suits unrequited, while having enviously to observe beneficiaries of the newly developed law profit thereby. Defendant concludes, therefore, that the doctrine of res judicata is applicable.

These contentions are sound. In every instance where a rule established by case law is changed by a later case the earlier rule may be said to be "mistaken"—in one sense of the word. It also may be said to be "unjust"; otherwise it would not have been changed. Such "mistakes" or "injustices" are not a ground for equity's intervention. So to hold would be to emasculate, if not wipe out, the doctrine of res judicata because the doctrine is most frequently applied to block relitigation based upon contentions that a law has been changed. Our courts have repeatedly refused to treat the self-evident hardship occasioned by a change in the law as a

---

[1]In *context* what Justice Traynor's opinion states is (on p. 213): "After a reevaluation of the rule of governmental immunity from tort liability we have concluded that *it must be discarded* as mistaken and unjust." And on page 216: "No one defends *total* governmental immunity. In fact it does not exist. It has become riddled with exceptions ..." etc. (Emphasis added.)

reason to revive dead actions; e.g., *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], changed the law and prohibited use of evidence unconstitutionally obtained. *People* v. *Martinez*, 145 Cal.App.2d 361 [302 P.2d 643] (hearing by Supreme Court denied), refused to vacate a final judgment after *Cahan* where the conviction was based upon illegally obtained evidence. (See also *Campbell* v. *Rainey*, 127 Cal.App. 747 [16 P.2d 310].) In *Hollywood Circle, Inc.* v. *Department of Alcoholic Beverage Control*, 55 Cal.2d 728 [13 Cal.Rptr. 104, 361 P.2d 712], a change in case law would have made an appeal timely from a decision of the department revoking a liquor license. But a ruling by the District Court of Appeal (hearing by the Supreme Court denied), based upon the superseded rule had held the appeal to be untimely—and that judgment had become final. It was held that the doctrine of res judicata applied.

And, finally, the very rule here involved, sovereign immunity, was also involved in a case decided by the California Supreme Court, April 4, 1962, *Overstreet* v. *County of Butte*, 57 Cal.2d 504 [20 Cal.Rptr. 631, 370 P.2d 335]. There the heirs of a decedent brought an action against the County of Butte and its employee for an alleged wrongful death. The county's demurrer was overruled. Thereafter, in *County of Butte* v. *Superior Court*, 178 Cal.App.2d 310, 311 [2 Cal.Rptr. 913], a writ of prohibition was issued upon the ground that the action was barred by the doctrine of sovereign immunity. Petition for hearing was denied by the Supreme Court. The writ became final. Pursuant to the writ the superior court ordered that the action be dismissed. The clerk entered the dismissal. Thereafter the *Muskopf* decision was filed and became final. Plaintiffs then took an appeal from the order of dismissal. It was held that the judgment was res judicata.

Plaintiffs see as a distinguishing circumstance that the trial court in *Overstreet* did not vacate the order of dismissal, whereas here it did. They contend applicability of the doctrine of res judicata is discretionary with the trial court. The trial court, however, has no discretion to exercise where the only mistake made by the appellate court in the earlier proceeding is in assuming that the doctrine of sovereign immunity would remain unchanged. *Overstreet* and this case, in our opinion, are indistinguishable.

The order appealed from is reversed.

Peek, P. J., and Schottky, J., concurred.