[Civ. No. 40482. Second Dist., Div. One. Mar. 6, 1973.]

In re the Marriage of SHIRLEY ETHEL and ALLAN A. WALL.
SHIRLEY ETHEL WALL, Respondent, v.
ALLAN A. WALL, Appellant.

## COUNSEL

Richard Morrris for Appellant.

Gerald M. Singer for Respondent.

## OPINION

LILLIE, Acting P. J.—Appellant and respondent were married in 1967; a premarital agreement provides that whatever property each had as of then shall remain the separate property of said party; at the time of separation there were five bank accounts—a separate account established by each party prior to marriage, a mutual checking account for household expenses (United California Bank), a savings account in Fidelity Federal Savings and Loan in the name of both parties as joint tenants, and a business account in the name of both parties; there were no children of the marriage and respondent sought no spousal support. The husband appeals from that portion of interlocutory judgment ordering the balance of $1,851.49 in the Fidelity Federal Savings and Loan account and a 1970 Buick Electra to be the sole and separate property of respondent, and a Baldwin organ to be community property and awarding the same to respondent.

As to the Fidelity account, in April 1969 Mrs. Wall's father gave her a gift of $6,000 by check; shortly thereafter she deposited it in the Fidelity joint tenancy savings account which then had a balance of $237.98; she did this "under pressure" and because her husband "insisted"; from May 7, 1969, through October 1970, they made various withdrawals in units of $500 and one of $1,000 which she used for household bills, bills in her husband's business and for a vacation; her husband "supposedly borrowed" from the account and in July 1969 returned $1,500 to it; "since then we drew again and again and again" leaving a balance of $1,851.49. Asked why she put the $6,000 in the joint account, Mrs. Wall answered, "I put it in not to pay for the house—for the household expenses, but to put it in in case we wanted to make a trip somewhere, for luxuries, for things that we ordinarily would never be able to afford"; asked by the court if she intended to make a gift of any money to her husband when she deposited the money in their joint names, she replied, "No. Really, no."[1]

It is undisputed that originally the $6,000 was respondent's separate property (§ 5107, Civ. Code). However, by depositing[2] it in the

---

[1] Mr. Wall testified that the $1,500 he put in the account was "excess" money after obtaining a deposit on a large order in his business, "Our agreement was that if we had any excess money that we put it into a joint account for the purposes of savings, security, or whatever"; "There was never any occasion of separate properties except on our premarital agreement," and pursuant to his agreement they each had a bank account for separate funds; his wife told him that the $6,000 "should go into our mutual funds as all other monies have. . . . I thought that it was very nice and I agreed"; he did not use any pressure.

[2] Mrs. Wall testified that her husband "insisted that we put it in joint, the same as we did with the car. It was under pressure." However, this is a conclusion of

Fidelity account in the name of both parties as joint tenants, she created a rebuttable presumption that the $6,000 became a part of the joint tenancy property (*Machado* v. *Machado,* 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55]; *Paterson* v. *Comastri,* 39 Cal.2d 66, 70 [244 P.2d 902]; *Tinsley* v. *Bauer,* 125 Cal.App.2d 724, 732 [271 P.2d 116]; *Cash* v. *Cash,* 110 Cal.App.2d 534, 538 [243 P.2d 115]). Such presumption can be overcome only by evidence tending to prove a common understanding or agreement that the character of the property was to be other than joint tenancy. (*Machado* v. *Machado,* 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55]; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212-213 [259 P.2d 656]; *Paterson* v. *Comastri,* 39 Cal.2d 66, 71 [244 P.2d 902]; *Socol* v. *King,* 36 Cal.2d 342, 345-346 [223 P.2d 627]; *Beck* v. *Beck,* 242 Cal.App.2d 396, 407 [51 Cal.Rptr. 491]; *Lovetro* v. *Steers,* 234 Cal.App.2d 461, 468 [44 Cal.Rptr. 604]; *Cash* v. *Cash,* 110 Cal.App.2d 534, 538 [243 P.2d 115].)

■ Whether the presumption has been rebutted by a showing that Mrs. Wall, when making the deposit, did not intend or agree to create a true joint tenancy account with her husband, was a question of fact for resolution by the trial court. (*Machado* v. *Machado,* 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55]; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212-213 [259 P.2d 656]; *Paterson* v. *Comastri,* 39 Cal.2d 66, 73 [244 P.2d 902].) Accordingly it found that the $1,851.49 balance in the account was respondent's separate property. The implication of this finding is that respondent offered sufficient credible evidence to rebut the presumption. We are bound by the finding if there is substantial evidence in the record to support it. (*Beck* v. *Beck,* 242 Cal.App.2d 396, 407 [51 Cal.Rptr. 491]; *Lovetro* v. *Steers,* 234 Cal.App.2d 461, 470 [44 Cal.Rptr. 604].) ■ The record shows that originally the $6,000 was respondent's separate property, but the presumption that it became joint tenancy property when deposited in the account cannot be rebutted merely by showing the source of those funds (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212 [259 P.2d 656]; *Beck* v. *Beck,* 242 Cal.App.2d 396, 408 [51 Cal.Rptr. 491]; *Donovan* v. *Donovan,* 223 Cal.App.2d 691, 696 [36 Cal.Rptr. 225]; *Cash* v. *Cash,* 110 Cal. App.2d 534, 538 [243 P.2d 115]); that respondent put the $6,000 in the account for the use of both parties—"in case we wanted to make a trip somewhere, for luxuries, for things that we ordinarily would never be able to afford"; that although she said she did not deposit it in the joint

---

the witness; and in light of a lack of explanation and her other testimony, it is not reasonable to conclude that the insistence or pressure was of the type indicating any fraud, coercion or undue influence that would render her act involuntary; nor does respondent suggest to the contrary.

account for use for household expenses, nevertheless, according to respondent, all of their subsequent withdrawals from that account were used to pay household bills, bills in her husband's business and for a vacation; that while she answered in the negative when asked if she intended to make a gift of any of the money to appellant when she deposited the $6,000 in their joint account, the record fails to show that this intention was ever communicated to appellant, and it is well settled that the presumption of the joint tenancy character of property cannot be overcome solely by evidence of a secret intention of one of the spouses, undisclosed to the other, that the property was to retain its previous character (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656]; *Socol* v. *King*, 36 Cal.2d 342, 345 [223 P.2d 627]; *Williams* v. *Williams*, 12 Cal.App.3d 172, 178 [90 Cal.Rptr. 457]; *Beck* v. *Beck*, 242 Cal.App.2d 396, 409 [51 Cal.Rptr. 491]; *Donovan* v. *Donovan*, 223 Cal.App.2d 691, 697 [36 Cal.Rptr. 225]; see *In re Marriage of Jafeman*, 29 Cal.App.3d 244, 258 [105 Cal.Rptr. 483]); and that each party maintained his separate bank account which would imply that they both understood what they were doing when they put their money into a joint savings account. (See *In re Marriage of Cosgrove*, 27 Cal.App.3d 424, 431 [103 Cal.Rptr. 733].)

The foregoing evidence falls short of proving an agreement by words or conduct that the money was to remain the separate property of respondent. She knowingly deposited her separate funds in a joint account the form of which created a joint tenancy. That constituted a gift to her husband and created a rebuttable presumption that the money therein was joint tenancy property. Either may rebut this presumption but in the absence of rebutting testimony the presumption must prevail. In the instant case there is no evidence that the parties intended that the joint account should be other than what it purports to be. While respondent testified that most of the money deposited in the account was her separate property, that alone is not sufficient to rebut the presumption that the account was intended to be what it states it is—a joint tenancy account; and neither the actions nor the words of the parties prove an agreement or understanding that the $6,000 was to remain her separate property. Thus the presumption prevails and the finding contrary to it is unsupported by the evidence. (*Cash* v. *Cash*, 110 Cal.App.2d 534, 538 [243 P.2d 115].)

■■■ The trial court also found that the 1970 Buick was respondent's separate property; appellant claims that the presumption that title to property taken in the names of husband and wife is held as community property was not overcome by substantial evidence.[3] Mrs. Wall

---

[3]Appellant argues that since respondent alleged in her petition that the Buick was community property and he did not deny the fact in his response, the trial

testified that in 1970 her father sent her a $3,000 check in her name "for a car"; she used it and a 1962 Thunderbird (her separate property) as down payment on a 1970 Buick which cost $5,500; there is an unpaid balance of $1,500; she used the car, maintained it, has always had possession of it and is making payments thereon; the vehicle was taken in the name of Allan Wall and Shirley Wall; Mr. Wall made four payments on the car with monies either from the Fidelity joint account or business account which also bears her name.

█ Whether the presumption of the community nature of the Buick created by its registration in the name of the parties has been rebutted is primarily a question of fact " '[A] finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. [Citation.] Further, a finding against a presumption is binding upon the appellate court [citation], unless the evidence to rebut it is so weak and improbable that the finding is without substantial support.' " (*Morris* v. *Berman,* 159 Cal.App.2d 770, 792 [324 P.2d 601]; *Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 123, 128 [264 P.2d 626].)
█ Again the presumption may not be rebutted solely by evidence of the source of the funds as separate property; nevertheless it is a factor the trial court may take into consideration in making its determination, especially if it is possible to trace the source. (See *Mason* v. *Mason,* 186 Cal.App.2d 209, 213-214 [8 Cal.Rptr. 784].) █ Respondent herself made the purchase of the Buick; for the down payment she used her own separate funds the source of which was uncontradicted; she kept the car in her possession, used it and maintained it. When asked if respondent indicated to him that she was taking the car as her separate property, Mr. Wall answered, "Yes. Oh, no, no. Sorry." The trial judge had the option of believing that Mr. Wall told the truth when he first answered, "Yes" over his subsequent negative answer. Then Mr. Wall was asked, "What did she say?" to which he responded, "The idea was that she was going to pay the $3,000

court erred in admitting evidence of the property interests of the parties therein, and in finding contrary to the admission in the pleadings. The petition, a printed form, provides for a listing of property under paragraph 3—"The property subject to disposition by the court in this proceeding is:"; and in subparagraph c immediately below, respondent listed among other things the Fidelity "joint account" and a "1970 Buick Electra." It might be argued that no property other than community property is subject to disposition by the court in such a proceeding but we conclude in the absence of direct allegation by respondent that the Buick is community property, that the trial court was not foreclosed from making inquiry into its character and a finding thereon, and that respondent was not foreclosed from offering proof on the issue.

from that gift that we got—or contribute it—and I was to continue all the balance of the payments. I paid four—the first four, and at that time we separated. She has been paying them since, and has possession of the car." This was the sum of his testimony about the Buick. The answer was unresponsive to the question and conclusionary, and the phrase, "the idea" means little for it conveys nothing more than a thought, even a desire that may well have dwelt in his mind alone. In light of the nature of Mr. Wall's testimony, the undisputed source of the money used for the down payment. and respondent's proprietary conduct in buying the car, using it, maintaining it and keeping it in her possession, obviously with her husband's knowledge and consent, we conclude there is sufficient evidence to establish an understanding that she would retain the vehicle as her separate property. Appellant made four payments some of which may have come from joint tenancy funds, but the community factor is inconsiderable in amount compared with the separate property contribution, and the whole was properly treated as respondent's separate property. (*Kershman* v. *Kershman,* 192 Cal.App.2d 18, 21 [13 Cal.Rptr. 288]; *Estate of Cudworth,* 133 Cal. 462, 467 [65 P. 1041].)

 ■ ■ The trial court found the Baldwin organ to be community property;[4] appellant claims the evidence established it as his separate property. Mrs. Wall testified that when they were married each owned a piano; there was no room for both and Mr. Wall stored his at his place of business; one day he called her and told her he had traded it for an organ he was going to give her as a present and arrange for her to have lessons; he provided the lessons and she learned to play it. Mrs. Wall's sister testified that Mr. Wall told her and her husband that he had purchased the organ for his wife as a combined birthday and Christmas gift. According to Mr. Wall he paid $1,500 for the organ and it is now worth $1,000; he received about $600 on his piano in trade and paid the balance of $900 from his separate bank account; he did not indicate to Mrs. Wall he intended to give her the organ as a gift and his intention was that both could have the benefit of the organ since they could not use two pianos in the home.

The trial judge stated that he did not believe the parties intended the

---

[4]Claiming that the organ was not listed as community property in respondent's petition, appellant argues that the court had no power to make a determination regarding it or award it to respondent. Respondent listed under "The property subject to disposition by the court in this proceeding," "Household Furniture and Furnishings," which we think is sufficient to include the Baldwin organ admittedly used in the home. Further, the issue was fully litigated by both parties.

organ to be a gift to respondent;[5] thus he must have accepted Mr. Wall's testimony that he intended that they both have the benefit of the organ since they could not use two pianos in the home. ■ In light of Mr. Wall's concession, the trial judge properly held that appellant made a contribution of his separate property to the community. At trial appellant neither claimed the organ as his separate property, asserted an agreement that he be reimbursed for his contribution of separate property for community purposes (*Weinberg* v. *Weinberg,* 67 Cal.2d 557, 570 [63 Cal.Rptr. 13, 432 P.2d 709]) nor proved that it was his intention that the organ was for anything other than their mutual benefit.

Respondent has applied for an allowance of attorney's fees for services rendered on this appeal. "The request for such fees is a matter which should ordinarily be addressed to the trial court, and we are of the view that the general rule should be followed here. [Citations.] Under the record presented upon this appeal we are unable to say whether the trial court could or should award attorney's fees." (*Craft* v. *Craft,* 49 Cal.2d 189, 194 [316 P.2d 345].)

The interlocutory judgment is modified by deleting paragraph 5 therein and substituting therefor "5. The Court further orders that any balance in the Fidelity Federal Savings and Loan account is held in joint tenancy by the parties." The judgment as modified is affirmed. The application for counsel fees on appeal is denied. Each party will bear his own costs.

Thompson, J., and Clark, J., concurred.

---

[5]The trial judge commented, after testimony relative to the organ, that during marriage many things in the home are purportedly purchased as gifts or for birthday presents and are considered as such until the parties separate at which time the claim is usually that they are really community property; and it is unrealistic for anyone to conclude that a gift was made under such circumstances; while there are circumstances where there is a gift, the evidence must be clear and convincing that he did not believe the parties intended the organ to be a gift to Mrs. Wall.