[Civ. No. 31931. First Dist., Div. Two. Apr. 15, 1974.]

THOMAS MITCHELL, Plaintiff and Appellant, v.
NATIONAL AUTOMOBILE AND CASUALTY INSURANCE
COMPANY, et al., Defendants and Respondents.

## COUNSEL

Bert E. Green for Plaintiff and Appellant.

Kirtland & Packard, Jacques E. Soiret, Robert E. Moore, Jr., Frank I. Fullenwider, Julian S. Ertz, Landels, Ripley & Diamond and Alan L. Fox for Defendants and Respondents.

## OPINION

**ROUSE, J.**—Plaintiff, Thomas Mitchell, appeals from a judgment of dismissal entered after the court sustained demurrers to the complaint with leave to amend and plaintiff failed to amend within the time allowed.

The record shows that the instant action was commenced on October 15, 1971, when plaintiff, Thomas Mitchell, filed a pleading entitled "COMPLAINT FOR MONEY (Class Action)." Plaintiff named as defendants five insurance companies allegedly doing business within the state.

In the first count of his complaint, plaintiff initially alleged that the subject of the action was one of common and general interest to all persons who had paid premiums on bail bonds issued by defendants which included a penalty assessment pursuant to section 13521 of the Penal Code; that the number of persons falling within the class was unknown but believed to be in excess of five million and that their identities could be ascertained from defendants' records; that plaintiff was a member of said class and that his interests were affected in like manner as the other members of the class; that it was impractical to bring all the members of the class before the court because of the great number of members and the fact that they resided in all parts of the state and, in some instances, had moved to other states.

After setting forth the above allegations bearing upon the propriety of a class action, plaintiff went on to allege the following facts: that within four years last past, plaintiff and the other members of the class had been required to enter into written contracts with one or more of the defendants to obtain surety bail bonds guaranteeing that plaintiff and the other members of the class would appear in response to criminal proceedings instituted within the state; that, as consideration for the issuance of the surety bail bonds, plaintiff and the other members of the class were each charged a sum equal to 10 percent of the bail set by the court plus 10 percent of an amount equal to 25 percent of the bail amount designated as a "penalty assessment"; that the collection of the 10 percent of the amount designated as a "penalty assessment" was an illegal and unconstitutional overcharge in violation of article I, section 6, of the California Constitution, which prohibits excessive bail, and was charged in mistaken reliance upon section 13521 of the Penal Code; that because of the mistaken nature of the overcharge, defendants were involuntary or constructive trustees of the premiums overpaid by plaintiff and the other members of the class and that defendants were under a duty to return same forthwith; that plaintiff was informed and believed that the total amount of the premium overcharges

for all members of the class amounted to a sum in excess of 25 million dollars. ·

In the second count of his complaint, plaintiff incorporated by reference all of the factual allegations of the first count and then alleged a cause of action for money had and received by defendants for the use and benefit of plaintiff and the other members of the class.

The third and final count of the complaint again incorporated by reference the factual allegations of the first count and further alleged that an actual controversy existed between plaintiff and defendants concerning the duty, if any, of defendants to refund the premium overcharges to plaintiff and the other members of the class. Plaintiff sought a judicial determination that the action properly constituted a class action, that he was a fair and true representative of the class and that he and the other members of the class were entitled to a refund of the excess premiums charged.

Plaintiff subsequently amended his complaint to substitute the names of five additional insurance companies in place of fictitious defendants listed in the original complaint.

Associated Indemnity Corporation, one of the 10 insurance companies named as defendants, was thereafter granted a summary judgment upon a showing that it did not issue bail bonds and had not done so at any time during the period from January 1, 1967, to the present.

Six of the remaining defendants, including Stuyvesant Insurance Company, Resolute Insurance Companies, National Automobile & Casualty Insurance Company, Wilshire Insurance Company, American Bonding Company and Surety Insurance Company of California, demurred to the first count of the complaint both generally and on the ground of improper joinder of two causes of action. Said defendants also demurred generally to the second and third counts of the complaint. The trial court sustained the demurrers with leave to amend, and upon plaintiff's failure to amend within the time allowed, entered a judgment of dismissal in favor of the demurring defendants. Plaintiff filed notice of appeal therefrom.[1]

---

[1] A seventh defendant, Peerless Insurance Company, demurred to the complaint on the same grounds raised by the other six defendants, but did not file its demurrer until after the court had already ruled on the demurrers of the other six defendants. The record shows the following chronology: On March 17, 1972, the court sustained the demurrers of the first six defendants with leave to amend; on April 11, 1972, Peerless Insurance Company filed its demurrer; on April 25, 1972, the Peerless demurrer was sustained with leave to amend, and on the same day, a judgment of dismissal was entered in favor of the first six demurring defendants; on May 8, 1972,

■ It would appear appropriate to note at the outset that this appeal is governed by the settled rule that when a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it will be presumed that the plaintiff has stated as strong a case as he can. (*Straughter* v. *Safety Savings & Loan Assn.* (1966) 244 Cal.App.2d 159, 162 [52 Cal.Rptr. 871]; *Vaughn* v. *Certified Life Ins. Co.* (1965) 238 Cal.App.2d 177, 180 [47 Cal.Rptr. 619].)

■ In the instant case, it is apparent from a reading of the complaint that plaintiff is seeking to recover on behalf of himself, and the other members of an alleged class, certain bail bond premiums collected on penalty assessments authorized by section 13521 of the Penal Code. The penalty assessments in question and the premiums thereon were collected at a time when none of the parties had any reason to suspect that section 13521 was invalid in any respect. Thus, plaintiff alleged in his complaint that defendants acted "in mistaken reliance upon . . . Section 13521." In fact, the constitutionality of section 13521 has been upheld as recently as July 1967 against a charge that it provided for the imposition of excessive bail. (*People* v. *Norman* (1967) 252 Cal.App.2d 381, 398-399 [60 Cal.Rptr. 609].) It was not until August 30, 1971, that the parties could have had any reason to believe that the penalty assessment provided for in section 13521 was unconstitutional. On that date, the California appellate court so held in *McDermott* v. *Superior Court* (1 Civ. 29500). The rendition of that decision by the Court of Appeal obviously furnished the impetus for the filing of the instant action, which was commenced a little over a month and a half later, on October 15, 1971. Following the rendition of the Court of Appeal decision in the *McDermott* case, a hearing was granted by the California Supreme Court. On February 25, 1972, that court held that the penalty assessment imposed by section 13521 of the Penal Code violated the federal and state constitutional prohibitions against excessive bail. (*McDermott* v. *Superior Court* (1972) 6 Cal.3d 693 [100 Cal.Rptr. 297, 493 P.2d 1161].) The court, in so holding, over-

---

plaintiff filed notice of appeal from "the Order of Dismissal entered herein on April 25, 1972"; on May 19, 1972, judgment of dismissal was rendered in favor of Peerless Insurance Company. Plaintiff never filed any further notice of appeal.

Peerless contends that it is not a party to this appeal and that the judgment of dismissal in its favor has become final by virtue of plaintiff's failure to take any appeal therefrom. This contention is clearly sound, since plaintiff appealed only from the judgment of dismissal entered on April 25, 1972, in favor of the other six demurring defendants. At the time the notice of appeal was filed, there was in existence no judgment of dismissal in favor of Peerless Insurance Company. When a judgment of dismissal in favor of said defendant was rendered, plaintiff obviously had the opportunity to appeal therefrom but did not do so. Peerless is therefore correct in contending that the judgment against it has now become final and that it is not a party to the instant appeal.

ruled *People* v. *Norman, supra,* insofar as that case had indicated that a penalty assessment could properly be levied in addition to bail set in an amount determined to be reasonable to insure a defendant's appearance in court.

Since the *McDermott* case was decided by our Supreme Court while the instant action was pending, the trial court asked the parties to brief the question of whether that case was retrospective or prospective only in application. Both sides did so. After reviewing the parties' briefs on this point, the trial court sustained the demurrers to plaintiff's complaint.

■ Although it is the general rule that a decision by a court of supreme jurisdiction overruling a prior decision is retrospective in operation, there is a well recognized exception to this rule: Where a statute has received a given construction by the court and contracts have been made or property rights acquired in accordance with the court's decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change in construction adopted in a subsequent decision. In such a situation, the later decision will be given prospective, and not retrospective, effect. (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680]; *Bank of America* v. *Department of Mental Hygiene* (1966) 246 Cal.App.2d 578, 586 [54 Cal.Rptr. 899].)

As pointed out in the early case of *Cooley* v. *County of Calaveras* (1898) 121 Cal. 482, 485 [53 P. 1075], "no subsequent decision of a court can create a mistake and annul a previous contract which was legal and valid when made." The court in the *Cooley* case also stated that "The understanding of the law prevailing at the time of the settlement of a contract, although erroneous, will govern, and the subsequent settlement of a question of law by judicial decision does not create such a mistake of law as courts will rectify." (Pp. 486-487.)

The operation of the rule espoused in the *Cooley* case can best be illustrated by reference to the facts in two subsequent cases applying said rule, *Campbell* v. *Rainey* (1932) 127 Cal.App. 747 [16 P.2d 310] and *Bank of America* v. *Department of Mental Hygiene, supra.* In the former case, the State Superintendent of Banks imposed an assessment upon the shareholders of an insolvent bank in accordance with a particular statute. The statute was subsequently held unconstitutional by the California Supreme Court, and suit was then commenced by one of the shareholders of the insolvent bank to recover from the Superintendent of Banks the sum he had paid on account of the assessment. The plaintiff prevailed in the trial court, but the judgment was reversed on appeal, with the appellate court

holding that the rights of the parties were governed by the understanding of the law prevailing at the time the assessment was levied and paid and not by the subsequent Supreme Court decision invalidating the statute authorizing the assessment.

In *Bank of America* v. *Department of Mental Hygiene, supra,* the department, acting under section 6650 of the Welfare and Institutions Code, brought suit against the executor of the will of one Cerruti to recover the sum expended for the care of Cerruti's daughter, a mentally ill person committed to Napa State Hospital. In December 1963, the executor settled and paid the claim in reliance upon a 1958 decision of the California Supreme Court upholding the constitutionality of section 6650. In 1964, the California Supreme Court decided *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.Rptr. 483, 388 P.2d 720, 20 A.L.R.3d 353], and held the statute unconstitutional. The executor then brought suit against the Department of Mental Hygiene to recover the sum paid in settlement of the department's claim. The trial court sustained a general demurrer to the executor's complaint without leave to amend and dismissed the action. The judgment of dismissal was upheld on appeal, with the appellate court applying the rule of the *Cooley* case to the effect that the law prevailing at the time of the settlement was controlling and not the subsequent decision invalidating section 6650. The court stated, "Plaintiff contends that *Kirchner* should be applied retroactively to allow a return of the estate's money on an unjust enrichment theory. However, it must be remembered that this is not an action brought by the state to collect a claim for care which was legal at the time presented and as to which the court is being asked to enforce the claim after the determination that the claim is no longer legal, but is an action for return of moneys paid in compromise at a time when the claim was still legal." (*Bank of America* v. *Department of Mental Hygiene, supra,* at p. 588.)

In the instant case, it is clear that at the time plaintiff and the other persons whom he claims to represent contracted with defendants to obtain bail bonds, there was no reason whatever for any of the parties to suspect that the penalty assessment authorized by section 13521 of the Penal Code was unlawful. To the contrary, under the law prevailing at that time, the constitutionality of section 13521 had expressly been upheld in *People* v. *Norman, supra,* wherein the court determined that the statute did not provide for the imposition of excessive bail.

Under the authorities above cited, it is apparent that plaintiff's complaint did not state a cause of action on any theory. The first count of the complaint sought the imposition of an involuntary or constructive trust

upon defendants because they had collected penalty assessments and premiums thereon in "mistaken reliance" upon section 13521 of the Penal Code. It suffices to state that defendants' reliance upon the statute was in accord with the understanding of the law prevailing at the time, which understanding is controlling of the rights of the parties.

The second count of the complaint was merely a common count for money had and received, and it was based upon the same facts pleaded in the first count and realleged in the second. ■ It is settled that when a common count is based upon the same facts specifically pleaded in another count which is subject to demurrer, the common count is likewise subject to demurrer. (*Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 489 [110 P.2d 396]; *Straughter* v. *Safety Savings & Loan Assn., supra,* at p. 164.) The third and final count of the complaint, purporting to state a cause of action for declaratory relief, must fail for the same reason. (*Levy* v. *Bellmar Enterprises* (1966) 241 Cal.App.2d 686, 692-693 [50 Cal. Rptr. 842].)

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 13, 1974.