[Civ. No. 60296. Second Dist., Div. One. Aug. 12, 1981.]

RANDAL G. JONES, Plaintiff and Appellant, v.
MARY E. DALY et al., as Executors, etc., Defendants and
Respondents.

**COUNSEL**

Andelson & Andelson and Sheldon W. Andelson for Plaintiff and Appellant.

Fred Okrand, Susan McGreivy and Robert R. Murdoch as Amici Curiae on behalf of Plaintiff and Appellant.

Katz, Hoyt & Bell, Louis C. Hoyt and Leslie F. Bell for Defendants and Respondents.

**OPINION**

LILLIE, J.—Plaintiff appeals from judgment dismissing his action for declaratory and other relief entered after the trial court sustained defendants' demurrer to the complaint without leave to amend.

Defendants are the executors of the estate of James F. Daly, who died in July 1978. The complaint contains seven causes of action. The first cause of action (for declaratory relief) alleges: Plaintiff, Randal Jones, first met James Daly in December 1975. Between that time and March 1976, they "met on frequent occasions, dated, engaged in sexual activities and, in general, acted towards one another as two people do who have discovered a love, one for the other." In March 1976 plaintiff and Daly orally agreed that plaintiff would move into Daly's condominium with Daly, quit his job, go travelling with Daly and "cohabit with him [Daly] as if [they] were, in fact, married." They also entered into an oral agreement (referred to hereinafter, in the language of the complaint, as "cohabitors agreement") whereby each agreed: during the time "they lived and cohabited together," they would combine their efforts and earnings and would share equally any and all property accumulated as a result of their efforts, whether individual or combined, except that Daly would give plaintiff a monthly allowance for his personal use, and they "would hold themselves out to the public at large as cohabiting mates, and [plaintiff] would render his services as a lover, companion, homemaker, traveling companion, housekeeper and cook to Daly"; and "in order that [plaintiff] would be able to devote a substantial portion of his time to Daly's benefit as his lover, companion, homemaker, traveling companion, housekeeper and cook," plaintiff would abandon "a material portion" of his potential career as a model, and in return Daly would furnish financial support to plaintiff for the rest of his life. Pursuant to and in reliance on the "cohabitors agreement," plaintiff and Daly "cohabited and lived together continuously" from March 1976 until Daly's death, and plaintiff allowed himself to be known to the general public "as the lover and cohabitation mate of Daly." Plaintiff performed all of the terms and conditions required to be performed by him under the "cohabitors agreement." During the time that plaintiff and Daly "lived and cohabited together" they acquired, as a result of their efforts and earnings, substantial real and personal property (hereinafter, in the language of the complaint, "cohabitors' equitable property"). Plaintiff does not know the exact nature and extent of such property, but he believes it has a value in excess of $2 million and will amend the complaint to reflect the true value when it is ascertained. Under the "cohabitors agreement," all of the "cohabitors' equitable property" was to be shared and divided equally between plaintiff and Daly. All of such property is in the possession of defendant executors and under their control. Plaintiff has demanded that defendants recognize his interest in the "cohabitors' equitable property," but defendants refuse to do so. On November 1, 1978, plaintiff filed in the

proceeding for probate of Daly's estate a creditor's claim, wherein he claimed one-half of the estate; defendants denied the claim. An actual controversy has arisen and now exists between plaintiff and defendants in that plaintiff contends, and defendants deny, that as a result of the "cohabitors agreement" plaintiff is entitled to one-half of all of the "cohabitors' equitable property" as a tenant in common with the estate of Daly and that defendants are under a duty to pay to plaintiff, on behalf of the estate, a reasonable sum for his support. Plaintiff desires a judicial determination of the validity of the "cohabitors agreement" and the respective rights, duties and obligations of plaintiff and defendants under that agreement.

The terms of the "cohabitors agreement" alleged in the first cause of action are incorporated into each of the subsequent causes of action other than the sixth and seventh causes of action. The second and third causes of action seek payment of plaintiff's creditor's claim rejected by defendants. The fourth cause of action seeks half of the "cohabitors' equitable property" on the theory of a constructive trust. The fifth cause of action alleges an implied in fact agreement between plaintiff and Daly for the equal division of all assets standing in Daly's name. The sixth and seventh causes of action are common counts which seek $300,000 as the reasonable value of plaintiff's services to Daly.

■■■■ Defendants demurred specially to the first cause of action on the ground of uncertainty, and demurred generally to all causes of action. The trial court sustained the demurrer to each cause of action without leave to amend[1] "per moving points and authorities." One of the arguments advanced by defendants in support of their demurrer was that under *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], the "cohabitors agreement" is unenforceable because the complaint shows on its face that plaintiff's rendition of sexual services to Daly was an express and inseparable part of the consideration for the agreement.

In *Marvin v. Marvin, supra*, 18 Cal.3d 660, a woman sued a man with whom she had lived for approximately six years without marriage

---

[1]It is an abuse of discretion to sustain a special demurrer without leave to amend since it is directed to a defect of form rather than of substance. (*Zumbrun* v. *University of Southern California* (1972) 25 Cal.App.3d 1, 8 [101 Cal.Rptr. 499, 51 A.L.R.3d 991].) However, inasmuch as the trial court sustained defendants' demurrer in general terms, we must assume that the court ruled only on the general demurrer and not on the special demurrer. (See *Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 544 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R. 301].)

alleging: that she and defendant entered into an oral agreement that while the parties lived together they would combine their efforts and earnings and would share equally in any and all property accumulated as a result of their efforts, whether individual or combined, that they would hold themselves out to the general public as husband and wife and that plaintiff would give up her career as an entertainer and singer in order to devote her full time to defendant as his companion, homemaker, housekeeper and cook; in return defendant agreed to provide for all of plaintiff's financial support and needs for the rest of her life. Plaintiff further alleged that after she had lived with defendant for almost six years, he forced her to leave his household and refused to recognize her rights under the contract. Plaintiff prayed for declaratory relief, asking the court to determine her contractual and property rights, and also to impose a constructive trust on half of the property acquired during the course of the relationship. The trial court granted defendant's motion for judgment on the pleadings. ■ The Supreme Court reversed the judgment, stating: "In summary, we base our opinion on the principle that adults who voluntarily live together and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights. Of course, they cannot lawfully contract to pay for the performance of sexual services, for such a contract is, in essence, an agreement for prostitution and unlawful for that reason. But they may agree to pool their earnings and to hold all property acquired during the relationship in accord with the law governing community property; conversely they may agree that each partner's earnings and the property acquired from those earnings remains the separate property of the earning partner. *So long as the agreement does not rest upon illicit meretricious consideration,* the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements." (18 Cal.3d at p. 674; italics added; fn. omitted.)

In determining whether the "cohabitors agreement" rests upon illicit meretricious consideration, we are guided by the following principles: "[A] contract between nonmarital partners, even if expressly made in contemplation of a common living arrangement, is invalid only if sexual acts form an inseparable part of the consideration for the agreement. ■ In sum, a court will not enforce a contract for the pooling of property and earnings if it is explicitly and inseparably based upon services as a paramour." (*Marvin* v. *Marvin, supra,* 18 Cal.3d 660, 672.) The complaint herein alleges: Following their initial meeting, plaintiff and Daly "dated, engaged in sexual activities and, in general, acted to-

wards one another as two people do who have discovered a love, one for the other"; plaintiff orally agreed "to cohabit with [Daly] as if [they] were, in fact, married"; at the same time they entered into the "cohabitors agreement" whereby they agreed that during the time "they lived and cohabited together" they would hold themselves out to the public at large as "cohabiting mates" and plaintiff would render his services to Daly as "a *lover*, companion, homemaker, traveling companion, housekeeper and cook" (italics added); in order that plaintiff would be able to devote his time to Daly's benefit "as his lover, companion, homemaker, traveling companion, housekeeper and cook," he would abandon his career; plaintiff and Daly "cohabited and lived together" and pursuant to and in reliance on the "cohabitors agreement," plaintiff allowed himself to be known to the general public as the "lover and cohabitation mate" of Daly. These allegations clearly show that plaintiff's rendition of sexual services to Daly was an inseparable part of the consideration for the "cohabitors agreement," and indeed was the predominant consideration.

Plaintiff argues that the complaint is not subject to the foregoing interpretation because the "accepted California concept of cohabitation is the mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but *not necessarily dependent upon sexual relations*" (*Boyd* v. *Boyd* (1964) 228 Cal.App.2d 374, 381 [39 Cal.Rptr. 400]; italics added); and while one meaning of the word "lover" is paramour, it also may mean a person in love or an affectionate or benevolent friend. (Webster's Third New Internat. Dict. (1966) p. 1340.) ■ Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 [172 P.2d 867]; *National Automobile & Cas. Ins. Co.* v. *Payne* (1968) 261 Cal.App.2d 403, 408 [67 Cal.Rptr. 784].) ■ The complaint alleges that plaintiff and Daly engaged in sexual activities, agreed to cohabit and to hold themselves out to the public as cohabiting mates, and entered into the "cohabitors agreement" whereby plaintiff was to render services to Daly as a lover. Viewed in the context of the complaint as a whole, the words "cohabiting" and "lover" do not have the innocuous meanings which plaintiff ascribes to them. These terms can pertain only to plaintiff's rendition of sexual services to Daly.

*Marvin* states that "even if sexual services are part of the contractual consideration, any *severable* portion of the contract supported by inde-

pendent consideration will still be enforced." (18 Cal.3d at p. 672; italics in original.) That principle is inapplicable in the present case. There is no severable portion of the "cohabitors agreement" supported by independent consideration. According to the allegations of the complaint, the agreement provided that the parties would share equally the earnings and property accumulated as a result of their efforts while they lived together and that Daly would support plaintiff for the rest of his life. Neither the property sharing nor the support provision of the agreement rests upon plaintiff's acting as Daly's traveling companion, housekeeper or cook as distinguished from acting as his lover. The latter service forms an inseparable part of the consideration for the agreement and renders it unenforceable in its entirety.

Since plaintiff's right to relief under the second through the fifth causes of action depends upon the validity of the "cohabitors agreement," the trial court properly sustained the demurrer thereto.

■ Appellant argues that the sixth and seventh causes of action (labelled, respectively, common counts in quantum meruit and for labor and services rendered) incorporated therein neither the "cohabitors agreement" nor any of the other allegations of the first cause of action relating to sexual services rendered by plaintiff to Daly, thus they are not subject to general demurrer. However, the common counts which are here sufficiently pleaded (see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 431, 436, 440, pp. 2088, 2093, 2094-2095) are so permeated with the same reason for the rendition of the "services rendered" by plaintiff, i.e., the sexual cohabitation of the parties, that it cannot be said that the agreement by Daly to pay for those services does not also rest upon illegal meretricious consideration.

We note that the period covered by the services rendered by plaintiff alleged in the common counts—March 1976 through July 1978—is the same time span covered by the "cohabitors agreement" alleged in the first cause of action; that the $300,000 prayed for in the common counts as the reasonable value of such services is alleged to be "equivalent approximately to one-half of the total estate of Daly," and that it is a one-half interest in the "cohabitors' equitable property" acquired during the cohabitation of the parties that is prayed for under the "cohabitors agreement" in the other causes of action; and that incorporated into the common counts are allegations of the first cause of action relating to plaintiff's presentation of his creditor's claim to Daly's estate (a copy of which is attached to the complaint and incorporated therein by

reference) which expressly rests on an "oral agreement" entered into "[a]bout March, 1976 through in or about July 1978," which "oral agreement" is obviously the precise "cohabitors agreement" described in the first cause of action.

While the simple pleading of the common counts standing alone would appear to be innocuous enough to withstand defendants' challenge, a common sense reading of the entire complaint promptly dispels any notion that the same element of illegal meretricious consideration that so infects the "cohabitors agreement" as to render it unenforceable does not as well dominate the common counts; and the reality of the situation dictates the conclusion that the recovery under the sixth and seventh causes of action is based on the exact set of circumstances specifically pleaded in the first cause of action. It is true that common counts are not subject to a general demurrer (*Auckland* v. *Conlin* (1928) 203 Cal. 776, 777 [265 P. 946]; *Moya* v. *Northrup* (1970) 10 Cal.App.3d 276, 279 [88 Cal.Rptr. 783]; *Miller* v. *McLaglen* (1947) 82 Cal.App.2d 219, 223 [186 P.2d 48]), but here they are subject to the rule that "if plaintiff is not entitled to recover under one count in a complaint wherein all the facts upon which his demand is based are specifically pleaded, it is proper to sustain a demurrer to a common count set forth in the complaint, the recovery under which is obviously based on the set of facts specifically pleaded in the other count." (*Hays* v. *Temple* (1937) 23 Cal.App.2d 690, 695 [73 P.2d 1248]; *Lambert* v. *Southern Counties Gas Co.* (1959) 52 Cal.2d 347, 353 [340 P.2d 608]; *Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 489 [110 P.2d 396]; *Mitchell* v. *National Auto. and Casualty Ins. Co.* (1974) 38 Cal.App.3d 599, 606 [113 Cal.Rptr. 391]; *Zumbrun* v. *University of Southern California, supra,* 25 Cal.App.3d 1, 14.)

The only remaining question is whether the trial court abused its discretion in denying leave to amend.[2] ■ Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility that the defect in the complaint can be cured by amendment. (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 157 [101 Cal.Rptr. 880, 496 P.2d 1248]; *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638].) However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. (*Cooper* v. *Leslie Salt*

[2]Plaintiff moved for reconsideration of the order sustaining the demurrer without leave to amend, and for an order overruling the demurrer or granting leave to amend the complaint. The motion was denied.

*Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].) That burden is not met where, as in the present case, plaintiff does not indicate either in the trial court or in this court the manner in which the complaint is proposed to be amended, and how that amendment will cure the defects in his pleading. (*Cooper* v. *Leslie Salt Co., supra,* 70 Cal.2d at p. 636; *Hilton* v. *Board of Supervisors* (1970) 7 Cal.App.3d 708, 716 [86 Cal.Rptr. 754].)

■ A complaint for declaratory relief is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that those rights and duties be adjudged by the court. (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 549-550 [305 P.2d 20]; *Columbia Pictures Corp.* v. *DeToth* (1945) 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747].) ■ The first cause of action meets these requirements and the demurrer to that cause of action therefore was improperly sustained. However, "[w]hile Code of Civil Procedure section 1060 entitles a plaintiff suing pursuant to its provisions to a declaration of rights and duties even if the eventual declaration may be adverse [citations], error of the trial court in refusing to entertain the action is nevertheless not prejudicial if it is clear from the face of the complaint that the plaintiff's position is untenable and that a declaration adverse to the plaintiff will end the matter." (*Warren* v. *Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678, 684-685 [121 Cal.Rptr. 19].) The complaint shows on its face that the "cohabitors agreement" is unenforceable, conferring no rights on plaintiff and imposing no duties upon defendants. Inasmuch as the opinion of this court is the equivalent of an express declaration to that effect, reversal of the judgment of dismissal as to the first cause of action would serve no purpose and would simply constitute an idle act. (See *Taschner* v. *City Council* (1973) 31 Cal.App.3d 48, 57 [107 Cal.Rptr. 214]; *Haley* v. *L. A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 292-294 [342 P.2d 476]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 731, pp. 2351-2353.)

The judgment is affirmed.

Spencer, P. J., and Hanson, J., concurred.