[Civ. No. 56335. Second Dist., Div. Five. Aug. 26, 1981.]

In re the Marriage of THEADORA D. and
HARLESS DAL MAHONE.
HARLESS DAL MAHONE, Appellant, v.
THEADORA D. MAHONE, Appellant.

**COUNSEL**

Jack L. Norman and Joseph I. Wedeen for Appellant Husband.

John A. Weyl for Appellant Wife.

OPINION

ASHBY, J.—Both parties appeal from a "Further Judgment on Reserved Issues After Bifurcation and Final Judgment of Dissolution of Marriage." The dispute on appeal concerns the court's determination of the community property and separate property. Husband contends the court erroneously determined that three parcels of real property were wife's separate property, and he further contends the court erred in determining that a portion of his military pension is community property. Wife contends that certain funds in joint savings accounts were erroneously determined to be community property rather than her separate property.

The parties were married in 1961 and separated in 1976. At the time of the marriage husband was a major in the United States Air Force. He retired from the Air Force in 1966 as a lieutenant colonel. At the time of trial he was a project manager with the County of Los Angeles earning $2,476 per month and was receiving air force retirement benefits of $1,181 per month. At all times during the marriage wife was a homemaker.

### HUSBAND'S APPEAL

#### *Military Pension*

The parties stipulated in the trial court that the portion of husband's United States Air Force retirement benefits accrued from 1961 to 1966 was community property, and the trial court so found pursuant to the stipulation. Husband contends that federal legislation establishing the retirement scheme for the military preempts the application of a state's community property law to the retirement pay of military personnel. The United States Supreme Court recently so held. (*McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].)

It does not follow, however, that husband should be relieved of the trial stipulation by reason of the *McCarty* decision. The written stipulation was filed with the trial court January 5, 1978. As of that date it was settled California law that a federal military retirement pension was subject to division as community property, and the United States Supreme Court had not indicated to the contrary. (*In re Marriage of*

*Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den. 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41], rehg. den. 419 U.S. 1060 [42 L.Ed.2d 657, 95 S.Ct. 644].) The stipulation was in accordance with the law as it then stood, and husband is not entitled to relief from the stipulation merely because the law was subsequently changed by judicial decision. (See *Cooley* v. *County of Calaveras* (1898) 121 Cal. 482, 485-486 [53 P. 1075]; *Campbell* v. *Rainey* (1932) 127 Cal. App. 747, 749-750 [16 P.2d 310]; *Mitchel* v. *National Auto. & Casualty Ins. Co.* (1974) 38 Cal.App.3d 599, 603-605 [113 Cal.Rptr. 391]; *Zeppi* v. *State of California* (1962) 203 Cal.App.2d 386, 388 [21 Cal. Rptr. 534].)

## Real Properties

The trial court determined that three residential properties (not the family residence) were the separate property of wife. One of these, the Novelly Drive property in Reno, Nevada, was acquired by wife prior to the marriage. The other two (Alpha Road and Marlin Way) were acquired during marriage.

In 1971 the parties' accountant advised husband they needed a tax shelter and suggested refinancing the Novelly Drive property and purchasing other property. Husband informed wife of the accountant's advice. A new loan secured by the Novelly property was obtained. The note was executed by both parties and title was transferred to the parties as joint tenants. The trial court found that at all times husband understood that the creation of the joint tenancy was for purposes of convenience, to facilitate the loan, and in furtherance of a plan to obtain income tax benefits for the community. Husband understood that wife did not intend to make a gift to husband of any interest in the Novelly Drive property.

The Marlin Way property was acquired in May 1971 by deed in the name of both parties as joint tenants pursuant to escrow instructions executed by both. Of the $5,580 down payment, $2,000 was borrowed in anticipation it would be repaid from the proceeds of the new Novelly Drive loan, which it was. The other $3,580 was withdrawn from a joint savings account at Glendale Federal Savings, but the source of this money was a $4,700 gift to wife from her father in June 1970. The trial court found that husband and wife understood that the acquisition of Marlin Way as joint tenants and the financing of said purchase were in

furtherance of their plan to obtain income tax benefits for the community and that they understood wife did not intend to make a gift to husband of any interest in the Marlin Way property.

The Alpha Road property was acquired in 1973 by deed in the names of both parties as joint tenants pursuant to escrow instructions executed by both parties. Of the $6,373 down payment, $5,500 was traced to a gift to wife of $21,600 by her father in July 1973. The court found that husband and wife understood that the acquisition of Alpha Road as joint tenants and the financing of the purchase were in furtherance of their plan to obtain income tax benefits for the community and that they understood wife did not intend to make a gift to husband of any interest in the Alpha Road property.

■ Since title to each of these properties was placed in the name of both parties as joint tenants, a presumption arose that the property was held jointly, as purported in the deed. Husband contends the evidence is insufficient to overcome that presumption to show that, notwithstanding the form of the title, these were the separate properties of wife. Whether there was such an understanding overcoming the presumption is a question of fact; however, the presumption may not be rebutted *solely* by evidence as to the source of the funds used to purchase the property. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656]; *In re Marriage of Wall* (1973) 30 Cal.App.3d 1042, 1046 [106 Cal.Rptr. 690].)

■ Besides the evidence of the source of the funding, in this case certain other evidence supports the inference there was an understanding between the parties that the property would not be owned as indicated in the deeds. There was evidence of the advice from the accountant that Novelly Drive be refinanced so that additional purchases could be made in order to give the parties a tax shelter. Husband discussed the accountant's advice with wife. From the financial circumstances of the parties it could reasonably be inferred that a joint loan application and the taking of title as joint tenants facilitated the loan. There was also a suggestion in husband's testimony with respect to Marlin Way and Novelly Drive that the lender wanted the title in joint tenancy. Husband also discussed that with wife. Finally, although throughout the marriage husband managed and controlled the properties, upon separation he voluntarily relinquished to wife complete management and control.

■ The trial court erred, however, in finding the three parcels were wife's separate property. There were community property contributions to all three acquisitions and there was no evidence that husband intended a gift of these community interests in the property to wife. The evidence supports the finding that the parties did not intend the property to be true joint tenancy, but nothing else. ■ We then have a situation where property has been acquired with commingled separate and community funds, with each retaining its own character if clearly ascertainable by tracing its source. (*In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 456 [152 Cal.Rptr. 668].)

Here, the amounts of separate and community funds are ascertainable; therefore, wife's separate interest and the community interest in each parcel are to be computed on a pro rata basis according to the formula set forth in *Aufmuth, supra*, and approved in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 816 [166 Cal.Rptr. 853, 614 P.2d 285]. Husband will then receive as his share one half of the community property interest and wife the remainder.

WIFE'S APPEAL

The parties had a joint savings account at Glendale Federal Savings which was opened in 1967. In July 1970, when the account had a balance of $1,040, wife received a gift from her father and deposited an additional $4,700. In May 1971 $4,000 was withdrawn for a portion of the down payment on Marlin Way. In August 1971 $5,500 was deposited, being some of the proceeds from the new Novelly Drive loan. In April 1972, when the balance was $6,118, husband withdrew $5,000 and placed it in his savings account with his credit union. According to husband's testimony the credit union account remained available as a source of ready cash for community expenses such as major appliances. The balance in the credit union account as of the date of separation was over $6,000. The court found this account to be community property.

■ Wife contends that the $5,000 withdrawn by husband from this Glendale Federal Savings account had its source in her separate property and that husband should fully reimburse her separate estate. It must be noted, however, that wife voluntarily placed the money in a joint savings account, creating a presumption that it was joint tenancy money and that she had made a gift to husband. (*In re Marriage of Wall* (1973) 30 Cal.App.3d 1042, 1046 [106 Cal.Rptr. 690]; *Cash v. Cash* (1952) 110 Cal.App.2d 534, 538 [243 P.2d 115].) The trial court evi-

dently found nothing to overcome that presumption, and substantial evidence supports the trial court. The removal of the money to a credit union account which, according to husband, was available for substantial community expenses was consistent with the court's finding.

■ The parties had another joint savings account at Glendale Federal Savings which was opened in October 1971 with a $10,000 deposit, the source of which was a gift to wife from her father. The account was in the name of the parties as husband and wife, as joint tenants. In 1976, prior to the separation of the parties, husband desired to purchase an airplane. This savings account was used as collateral for a loan to purchase the airplane. The application for a loan and the security agreement were signed by both parties. Husband testified that wife had taken rides in this airplane before purchase, that he presented her a loan application, telling her that he was buying a plane and that her signature was required. She posed no objections and executed the papers. The total of the loan was $7,349. After separation husband defaulted on the loan and $5,467 was charged against the account to pay off the balance.

The trial court found that the plane was purchased by husband in anticipation of separation and that the entire debt was his separate obligation. The court held that the debt had been paid out of community funds and that therefore husband was obligated to the community for the full amount of the debt. Wife contends that the account was her separate property, not community property, and that husband should be required to reimburse her separate estate, not the community.

Again, we must assume in support of the judgment that the court found wife made a gift to the community when she voluntarily placed the money in a joint account and voluntarily agreed to sign the loan application and pledge the savings account as collateral. We cannot say there is no substantial evidence to support that finding. (*In re Marriage of Wall, supra,* 30 Cal.App.3d at pp. 1046-1047.)

The judgment is reversed and the cause remanded for redetermination of the parties' interests in the three real properties. In all other respects the judgment is affirmed. The parties to bear their own costs on appeal.

Kaus, P. J., concurred.

**STEPHENS, J.**—I respectfully dissent.

As to the portion of the majority opinion treating the "Military Pension," it is my opinion that the parties should be relieved of any binding effect of a "community property status" stipulation. During the pendency of this appeal, as the majority opinion points out, the United States Supreme Court declared the legal status of military pensions is not as was understood in California. Since it is obligatory on the trial court to divide equally the community property between the spouses, an artificial element should not be included in that division, i.e., that pension which is not legally community property. Here it is necessary to remand the case to the trial court for recomputation of division and I see no valid reason not to relieve the parties from what is now a legally erroneous stipulation.

As to the recomputation of the assets in the various house purchases, it appears to me necessary that the court reanalyze the status of these properties, i.e., they are either community property or joint tenancy (except such part which may maintain a separate property status). If the community has an interest, the court may divide it or impose obligations upon such interest, if it is not, an entirely different set of rules apply, each party having joint tenancy interests.

It appears to me that the record establishes that the instant case was tried upon a misconception of what was separate and what was community property from the pension, through the real property and the bank accounts into the funding of the airplane. I would therefore reverse the case in toto in order that the court might properly consider the case in all its aspects rather than piecemeal a reversal which may ultimately result in an injustice to one, or both, of the parties.

I would reverse and remand for retrial.

The petition of appellant Wife for a hearing by the Supreme Court was denied October 21, 1981. Kaus, J., did not participate therein.